04/07/2008 01:47 4158920337 PAGE 02/11

SEALED BY ORDER OF THE COURT

1 KENNETH J. NOLAN, Esq. (SBN 603406)
   MARCELLA AUERBACH, Esq. (SBN 249335)
2 NOLAN & AUERBACH, P.A.
   435 N. Andrews Ave., Suite 401
3 Fort Lauderdale, FL 33301
   (954) 779-3943
4 (954) 779-3937 (fax)

5 MATTHEW B. PAVONE, Esq. (SBN 94965)
   NOLAN & AUERBACH, P.A.
6 Courtyard Square
   750 Grant Avenue, Suite 250
7 Novato, CA 94945
   (415) 209-9610
8 (415) 892-0337 (fax)

9 Attorneys for Plaintiff John Prieve

**FILED**

APR - 7 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

10                 IN THE UNITED STATES DISTRICT COURT

11            FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                       SAN FRANCISCO DIVISION

13

14

15 UNITED STATES OF AMERICA; and          )   Civil Action No.
   THE STATES OF ILLINOIS,                )
16 CALIFORNIA, FLORIDA, TEXAS,            )   C08 - 01 ...
   DELAWARE, HAWAII, INDIANA,             )
17 LOUISIANA, NEW HAMPSHIRE,              )   FALSE CLAIMS ACT COMPLAINT
   NEVADA, TENNESSEE, MICHIGAN,           )
18 NEW MEXICO, NEW YORK, and              )   FILED UNDER SEAL
   THE COMMONWEALTHS OF                   )   PURSUANT TO
19 MASSACHUSETTS and VIRGINIA; and        )   31 U.S.C. §3730(b)(2)
   THE DISTRICT OF COLUMBIA; ex rel.      )
20 JOHN PRIEVE.                           )
                                          )
21            Plaintiffs and Relator      )
                                          )
22 vs.                                    )
                                          )
23 MALLINCKRODT, INC.                     )
                                          )
24            Defendant                   )

25                    FALSE CLAIMS ACT COMPLAINT

26                           INTRODUCTION

27    1.    *Qui tam* Relator JOHN PRIEVE brings this action on behalf of the United States

28

FALSE CLAIMS ACT COMPLAINT

1    against MALLINCKRODT, INC. (hereinafter referred to as Defendant) for treble damages and civil

2    penalties arising from Defendant's conduct in violation of the Civil False Claims Act, 31 U.S.C. §

3    3729, et seq. ("FCA"). The violations arise out of requests for payment by Medicaid, Medicare,

4    TRICARE, and other federally-funded government healthcare programs (hereinafter collectively

5    referred to as "Government Healthcare Programs").

6    1.    This action is also brought under the respective qui tam provisions of False Claims

7    Acts (or similarly named) on behalf of the STATE OF ILLINOIS, the STATE OF CALIFORNIA,

8    the STATE OF FLORIDA, the STATE OF TEXAS; the COMMONWEALTH OF

9    MASSACHUSETTS; the STATE OF DELAWARE; the DISTRICT OF COLUMBIA, the STATE

10   OF HAWAII, the STATE OF INDIANA, the STATE OF LOUISIANA, the STATE OF NEW

11   HAMPSHIRE, the STATE OF NEVADA, the STATE OF TENNESSEE, the STATE OF

12   MICHIGAN, the STATE OF NEW MEXICO, THE STATE OF NEW YORK, and the

13   COMMONWEALTH OF VIRGINIA. These states, along with the UNITED STATES, are hereafter

14   collectively referred to as the Government.

15   2.    This Complaint describes violations of the False Claims Act by offering and paying

16   to physicians and other healthcare providers (hereinafter sometimes collectively referred to as

17   "providers"), to induce them to prescribe certain pharmaceutical products. The practices, part of a

18   highly organized and often blatant campaign, involved paying physicians as "consultants," and

19   included: (1) Providing payments for phony drug trials and phony data collection; (2) Providing

20   kickbacks in the form of lavish entertainment, (3) Providing phony speaker fees a/k/a "honorariums";

21   (4) Providing payments for phony preceptorships;    (5) Using "advisory panel meetings" as

22   inducements; (6) Creating phony paperwork programs as a means to provide kickbacks. This

23   Complaint also describes violations of the False Claims Act by actively promoting certain products

24   for "off-label" uses, which uses were not covered under any Government Program.

25   3.    Relator has complied with all procedural requirements of the laws under which this

26   case is brought.

27   4.    Relator is informed and believes that the pervasive kickbacks and false claims

28   described herein began at latest in 2004, and continues to date.

1 | FEDERAL JURISDICTION AND VENUE

2    5.    The acts proscribed by 31 U.S.C. §3729 *et seq.* and complained of herein occurred

3 in part in the Northern District of California, and Defendant does business in the Northern District

4 of California. Therefore, this Court has jurisdiction over this case pursuant to 31 U.S.C. 3732 (a),

5 as well as under 28 U.S.C. § 1345. This Court has jurisdiction over this case for the claims brought

6 on behalf of the states (referenced in paragraph 2) pursuant to 31 U.S.C. §3732(b), inasmuch as

7 recovery is sought on behalf of said states which arises from the same transactions and occurrences

8 as the claim brought on behalf of the United States. Moreover, Defendant transacts business in said

9 states.

10    6.    Venue is proper in this District pursuant to 31 U.S.C. § 3732(a), because Defendant

11 transacts business in this District, and in fact, a substantial amount of false claims that are described

12 in this Complaint occurred in the Northern District of California.

13    7.    The facts and circumstances which give rise to Defendant's violation of the False

14 Claims Act have not been publicly disclosed in a criminal, civil, or administrative hearing, nor in

15 any congressional, administrative, or General Accounting Office report, hearing, audit, or

16 investigation, nor in the news media.

17    8.    Relator is the original source of the information upon which this complaint is based,

18 as that phrase is used in the False Claims Act and other laws at issue herein.

19    9.    Defendant MALLINCKRODT INC., is a Delaware corporation with its principal

20 place of business located in Hazelwood, MO. From 2000 until 2007, it was a subsidiary of Tyco

21 Healthcare, Inc., a subsidiary of Tyco International. In July 2007, Tyco International spun off into

22 three separate companies: Tyco International, Tyco Electronics, and Covidien. With the split in 2007,

23 Defendant became a subsidiary of Covidien (U.S.), whose headquarters are located in Mansfield,

24 MA.

25    10.    Relator, JOHN PRIEVE, is a resident of the State of Illinois, and is currently

26 employed by Defendant as a District Manager in the Defendant's Brand Pharma Division.

27    11.    Defendant's "Brand Pharma" division currently sells the following drugs: Restoril,

28 Tofranil PM, Magnacet, Anafronil, Depade, Methadose and Pamelor. Only Restoril, Tofranil PM

1   and Magnacet are actively promoted by the sales representatives, and are the subject of this lawsuit.

2       12.    Relator brings this action based on his direct knowledge and, where indicated, on

3   information and belief. None of the actionable allegations set forth in this Complaint are based on

4   a public disclosure as set forth in 31 U.S.C. §3730(e)(4), and Relator is an original source of the facts

5   alleged in this Complaint.

6       13.    At all times relevant hereto, Defendant acted through its agents and employees, and

7   the acts of Defendant's agents and employees were within the scope of their agency and employment.

8   The policies and practices alleged in this complaint were, on information and belief, established

9   and/or ratified at the highest corporate levels of Defendant.

10                                    THE DRUGS

11      14.    The conduct alleged in this lawsuit applies to three drugs marketed by the Defendant,

12  as follows:

13      a.     Tofranil-PM (imipramine pamoate) capsules are FDA labeled as "indicated for the

14  relief of symptoms of depression. Endogenous depression is more likely to be alleviated than other

15  depressive states." The original NDA (017090) was approved on March 11, 1973.

16      b.     Defendant obtained an ANDA for a generic version of Tofranil-PM in 2006. It then

17  began promoting both the generic and brand versions. Even though it was "generic," it was the only

18  generic and therefore it was priced merely 10% less than the brand version. It included a Black Box

19  warning regarding the increased risk of suicidality in children (as do all antidepressants).

20      c.     Tofranil is a tricyclic antidepressant. Tricyclic antidepressant are a class of

21  antidepressant drugs first used in the 1950s. In the past decade, the prescription of selective serotonin

22  reuptake inhibitors (SSRIs) for the treatment of depression has far surpassed that of TCAs. However,

23  TCAs remain second only to analgesics as the most common drugs implicated in overdose fatalities.

24  Some evidence suggests that TCAs are associated with more overdose fatalities per number of

25  prescriptions issued than other antidepressant classes. (Samara Soghoian, M.D. "Toxicity, Tricyclic

26  Antidepressant," retrieved on 3/25/08 at www.emedicine.com).

27      15.    Restoril (temazepam) capsules FDA label states that it is indicated:

28              . . . for the short-term treatment of insomnia (generally 7-10 days).

FALSE CLAIMS ACT COMPLAINT
- 4 -

10358212.tif - 4/7/2008 12:53:55 PM

1            For patients with short-term insomnia, instructions in the prescription
        should indicate that Restoril® (temazepam) should be used for short
2            periods of time (7-10 days). The clinical trials performed in support
        of efficacy were 2 weeks in duration with the final formal assessment
3            of sleep latency performed at the end of treatment.

4
        a.      Restoril 7.5MG, 15MG, and 30MG.were approved by the FDA on February 27, 1981.
5
     Four companies are approved for therapeutic equivalence for the 15MG and 30MG capsule. The 7.5
6
     mg capsule has patent protection through 2010. In addition a 22.5mg strength was FDA-approved
7
     in November 2004, and launched by Defendant in early 2005.
8
        b.      Defendant has promoted the 7.5mg and 22.5mg doses only, because it has no
9
     competition for those doses. Defendant has marketed the 7.5mg dose by producing a study that
10
     purportedly showed that the 7.5mg had efficacy equal to the 15mg dose and therefore the 7.5mg was
11
     an appropriate lowest effective dose for temazepam (because side effects would be lower).
12
     Defendant promoted the 22.5mg dose over the 30mg dose with the same study, by employing a
13
     "dose-response" curve analogy. The promoted doses had no competition while the un-promoted
14
     doses did.
15
        c.      Restoril (temazepan) is a Schedule IV controlled substance. Medical literature
16
     references its high abuse potential.
17
        16.     Magnacet™ (oxycodone/acetaminophen) capsules are available in 2.5\400, 5/400, and
18
     7.5/400, and 10/400 MG strengths. All acetaminophen/oxycodone products, are indicated "for the
19
     relief of moderate to moderately severe pain." Although not detailed herein, the marketing practices
20
     attributable to Tofranil-PM and Restoril as it related to kickbacks are also applicable to Magnacet,
21
     since its FDA approval in March 2006.
22
        17.     Medicaid reimbursement information concerning Tofranil-PM, generic imipramine
23
     pamoate, and Restoril, is provided (in approximation) below:
24

25

26

27

28

**FALSE CLAIMS ACT COMPLAINT**
- 5 -

| PRODUCT | TOTAL 2002 THRU 3RD QTR 2007 |
|---|---|
| RESTORIL 22 5 MG | $358,309 |
| RESTORIL 7.5 MG | $25,377,775 |
| | $25,736,084 |
| RESTORIL 15 MG | $204,450 |
| RESTORIL 30 MG | $743,583 |
| | $948,033 |
| TOFRANIL PM 75MG CAPS | $7,946,224 |
| TOFRANIL PM 100MG CAPS | $1,947,575 |
| TOFRANIL PM 125MG CAPS | $221,243 |
| TOFRANIL PM 150MG | $2,077,910 |
| | $12,192,952 |
| IMIPRAMINE PAMOATE | $1,087,249 |
| IMIPRAMINE PAMOATE | $327,141 |
| IMIPRAMINE PAMOATE | $20,343 |
| IMIPRAMINE PAMOATE | $212,385 |
| | $1,647,118 |
| TOTAL | $40,524,187 |

18.     Tofranil-PM and its generic are available under most Medicare Part D plans. Restoril, as a benzodiazepine, is excluded from Medicare Part D coverage altogether.

## THE REGULATORY ENVIRONMENT

19.     Pursuant to the Anti-Kickback Act, 42 U.S.C. Section 1320a-7b(b), it is unlawful to knowingly offer or pay any remuneration in cash or in kind in exchange for the referral of any product (including a prescription drug product) for which payment is sought from any federally-funded health care program, including Medicare, Medicaid, and TRICARE.

20.     The Anti-Kickback Act is designed to, *inter alia*, ensure that patient care will not be improperly influenced by inappropriate compensation from the pharmaceutical industry.

21.     Every federally-funded health care program requires every provider or supplier to ensure compliance with the provisions of the Anti-Kickback Act and other federal laws governing the provision of health care services in the United States.

22.     The Anti-Kickback Act prohibits suppliers such as pharmaceutical manufacturers from compensating, in cash or in kind, a health care provider when a purpose of the payment is to

FALSE CLAIMS ACT COMPLAINT
- 6 -

1    influence the provider's prescribing habits or to gain favor for its product over the product of any

2    competitor.

3            23.     The Federal False Claims Act provides, in pertinent part that:

4                    (a) Any person who (1) knowingly presents, or causes to be presented, to an officer
                     or employee of the United States Government or a member of the Armed Forces
5                    of the United States a false or fraudulent claim for payment or approval; (2)
                     knowingly makes, uses, or causes to be made or used, a false record or statement
6                    to get a false or fraudulent claim paid or approved by the Government; (3)
                     conspires to defraud the Government by getting a false or fraudulent claim paid or
7                    approved by the Government;
                                                    * * *
8                    is liable to the United States Government for a civil penalty of not less than $5,000
                     and not more than $10,000, plus 3 times the amount of damages which the
9                    Government sustains because of the act of that person.

10    31 U.S.C. § 3729. A violation of the Anti-kickback Act is a violation of the False Claims Act.

11           24.     The United States Food, Drug and Cosmetic Act (FDCA) establishes the framework

12    for regulation of, *inter alia*, the sales and marketing activities of pharmaceutical manufacturers in

13    the United States, including the introduction of new drugs into interstate commerce.  When the

14    United States Food and Drug Administration ("FDA") approves a drug, it approves the drug only

15    for the particular use for which it was tested, but after the drug is approved for a particular use, the

16    FDCA does not regulate how the drug may be prescribed.  Thus, a drug that has been tested and

17    approved for one use only can also be prescribed by a physician for another use, known as an "off-

18    label" use.

19           25.     While a physician may prescribe a drug for a use other than one for which it is

20    approved, the FDCA prohibits a drug manufacturer from *marketing or promoting* a drug for non-

21    approved uses.  21 U.S.C. § 331(d), 355(a).  It therefore is illegal for a drug manufacturer and its

22    sales representatives to initiate discussions with medical professionals regarding any off-label use

23    of the drug.

24           26.     The dissemination of information or materials by a pharmaceutical manufacturer of

25    any unapproved or off-label use, also known as "misbranding," constitutes unlawful promotional

26    advertising of the drug and violates the FDCA.

27           27.     In addition to prohibiting manufacturers from directly marketing and promoting a

28    product's unapproved use, Congress and the FDA have acted to prevent manufacturers from

1   employing indirect methods to accomplish the same end. For example, the FDA regulates two of
2   the most prevalent indirect promotional strategies: (A) manufacturer dissemination of medical and
3   scientific publications concerning the off-label uses of their products; and (B) manufacturer support
4   for Continuing Medical Education ("CME") programs that focus on off-label uses.

5        28.    With regard to the first practice—disseminating written information—the FDCA
6   allows a manufacturer to disseminate information regarding off-label usage only in response to an
7   "unsolicited request from a health care practitioner." 21 U.S.C. §360aaa-6 (emphasis added). In any
8   other circumstance, a manufacturer is permitted to disseminate information concerning the off-label
9   uses of a drug only after the manufacturer has submitted an application to the FDA seeking approval
10  of the drug for the off-label use; and has provided the materials to the FDA prior to dissemination.
11  The materials must be submitted in an unabridged form and must not be false or misleading. 21
12  U.S.C. §§ 360aaa(b) & (c);360aaa-1.

13       29.    In sum, the off-label regulatory scheme protects patients and consumers by ensuring
14  that drug companies do not promote drugs for uses other than those found to be safe and effective
15  by an independent, scientific governmental body—the FDA.

16       30.    Reasons why Congress made off-label marketing and promotion by drug
17  manufacturers illegal include, without limitation, the following:

18       (a)    Off-label promotion diminishes or eliminates the drug manufacturer's incentive to
19              study the use of its drug and obtain definitive safety and efficacy data;

20       (b)    Off-label promotion harms patients as the result of unstudied uses that lead to
21              adverse results, or are ineffective;

22       (c)    Off-label promotion diminishes the use of evidence-based medicine; and

23       (d)    Off-label promotion erodes the efficacy standard in medicine.

24                              UNLAWFUL PROMOTION

25       31.    Without financial inducement to the providers, the majority of the prescriptions for
26  Defendant's drugs would absolutely not be prescribed.

27       32.    The illegal activity alleged herein was first communicated to Relator in a July 22,
28  2005 sales management meeting, likely in St. Louis, Mo.

1      33.    Management made it clear that it was looking for shady doctors that were "high

2   volume tricyclic antidepressant and sleeper writers" who would be receptive to Defendant's

3   "consulting" arrangements. Physicians with "good access" or "excellent access" was a euphemism

4   for physicians who would be receptive to prescribing Defendant's products.

5                 KICKBACKS - FIELD MARKETING SPECIALIST PROGRAM

6   Introduction

7      34.    As Tofranil-PM and Restoril were considered out-dated, third-rate drugs, it took

8   kickbacks to effectuate prescription sales, and Defendant implemented its kickbacks, in 2005,

9   through the Field Marketing Specialist Program ("FMSP"). The FMSP program was designed to

10  recruit physicians with high prescription volume in the sleep hypnotic, depression or pain markets,

11  through monetary inducements. The Field Marketing Specialists (FMS's) were brought in to assist

12  the sales representatives to obtain physicians as "consultants."

13     35.    Physicians were targeted as "consultants" based upon (1) the volume of tricyclic

14  antidepressant and/or sleeper medications they typically wrote; (2) the extent to which they were

15  *willing* to be a "consultant."

16     36.    Whether or not Defendant would hire a "consultant" was primarily determined by

17  whether or not the "consultant" was willing to "play ball" by prescribing its 20-30 year old drugs in

18  higher volumes. It was made clear to potential physician consultants during the initial meeting with

19  the FMS, that Defendant was looking for 50-60 prescriptions a month of their products while

20  employed as a "consultant" doing "data collection or other projects."

21  Foundation of the Kickbacks : The Consulting Agreements

22     37.    The vehicle to pay the providers were based upon consulting arrangements set forth

23  in two Consulting Agreements, each implemented at different times. The 2005 Consulting

24  Agreement, was the main vehicle to implement the kickbacks. The entire Agreement is boiler plate

25  and could almost apply to any consultant for any business. The fourth paragraph of page 1, entitled

26  "Compensation," provides:

27            ... Mallinckrodt will pay Consultant at the rate of $250 per hour which shall be
              paid to consultant within 45 days of receipt of Consultant's invoice and Consultant
28            shall bill Mallinckrodt in 1/4 hour increments and provide Mallinckrodt with

                                  **FALSE CLAIMS ACT COMPLAINT**
                                            - 9 -

1          detailed time entries describing work performed...

2      38.    Consultants were paid upon the submission of a form invoice prepared by Defendant.

3      39.    Doctors were referred to on internal spreadsheets as "sales consultants" or "marketing

4  consultants." Typically a "sales consultant" was a speaker, or at least would be paid honorariums as

5  a speaker out of the District-level budget. A "marketing consultant," on the other hand, was paid

6  from the home office marketing budget and typically was paid for other purported reasons in addition

7  to speaker fees.

8      Kickback Programs

9      Trials

10     40.    Defendant set up "clinical trials" for their decades old drugs, solely for

11  the purpose of generating sales. Unlike legitimate clinical trials: (1) The "clinical trials" were placed

12  and managed by the Defendant's sales force, not any research division;(2) Sales representatives

13  would help a physician fill out the "clinical trial" forms;(3) Internal e-mails outwardly admit that

14  their primary role was to generate sales for the sales force, not produce legitimate results which could

15  be used for research on their products.

16     41.    Providers were recruited from *any* specialty, and the goal was to get the targeted

17  physician to agree to convert or start a certain number of patients from his/her practice, on either

18  Restoril, Tofranil-PM, (or later, Magnacet). The number of patients mutually agreed as "necessary"

19  for the clinical trial was usually in the range of 50-60 per month. The physician consultant, was

20  compensated at a rate of $250.00 per hour for their time spent to convert or initiate therapy on one

21  of Defendant's drugs from the physician's patient pool.

22     42.    The "consultant" was paid by billing Defendant using a simple form invoice that was

23  prepared by Defendant and often completed by Defendant's employees. Some physicians were set

24  up for the mutually agreed number of hours per month for their consultantships, which were to

25  continue as long as the patient volume on Defendant's products remained at a certain level. The

26  "studies" were not even remotely scientific. Since only the sales force was involved with the data,

27  there were no designs, protocol or anything that is ordinarily used in a clinical trial. In fact, the

28

FALSE CLAIMS ACT COMPLAINT
- 10 -

1    Mallinckrodt Brand Pharma division consists only of marketing, sales, sales operations and training,
2    and business development departments. There is no research and development department in the
3    division. Feedback was given to the FMS through either a dinner meeting (for which the consultant
4    was again paid) or other informal method, usually just mailed to the FMS by the physician with no
5    actual verification of time worked for the month.

6                                    Speaker Programs

7             43.    Another way to put money in a physician's pocket was to have him be a "consultant"
8    *speaker*. For the consultants to perform speaker programs, there were neither slide sets nor training
9    provided. The speaker programs consisted simply of a small number of physicians invited to a
10   lunch/dinner, typically with known physician acquaintances or from whom the speaker received
11   referrals, to discuss the "consultant's" experience with the product(s).

12                                   Preceptorships

13            44.    Preceptorships were ostensibly a teaching session in which a physician would teach
14   the FMS certain technical aspects of his practice, in exchange for the sum of $ 250/per hour. In
15   actuality, preceptorships were used to provide monetary inducements to physicians. Although
16   Defendant paid thousands of dollars to physicians for preceptorships, the teaching portion was
17   almost never performed. Rather, it was simply another example of paid access to the physician by
18   the FMS in order to facilitate a sales presentation opportunity of the Defendant's products. The FMS
19   would typically use the time to provide clear and direct feedback regarding the physician's
20   prescription performance. Preceptorships were sometimes repeated with the same physicians several
21   times over and over.   Defendant issued 1099s to each physician who received these type of
22   payments.

23            45.    In contrast to a pharmaceutical company that does not illegally use preceptorships as
24   kickbacks, Defendant's FMS team: (1) did not need manager approval to conduct preceptorships;
25   (2) could perform unlimited preceptorships, including multiple times within the same physician
26   group or physician; (3) could pay $250/hour to the physician and spend as much or little time with
27   the physician as they wanted; (4) almost always used preceptorships for reasons other than
28   educational purposes, e.g. to get to know the physician, pay-off the physician, or make up for some

1    loss that a physician incurred.

2            Advisory Panel Meetings

3        46.    These meetings were for the ostensible purpose of getting input/feedback from

4    physicians on drug performance, how they treat disease states, etc., although internal e-mails clearly

5    admit otherwise. During the Advisory Panel meetings, honorariums, lavish entertainment and

6    expenses for physicians were paid for by Defendant.

7        47.    Advisory Panels were utilized not only to pay-off prescribing physicians, they were

8    also utilized to get feedback from the physicians for how to market Tofranil-PM to other physicians.

9    Indeed, the Defendant was transparent, by referring to the meetings as "TPM *message* research

10    programs." Physicians, nevertheless, would not be invited unless they were high prescribers.

11            Phony Paperwork Programs

12        48.    These programs were designed to induce physicians to prescribe Defendant's

13    products, in exchange for money and the intent to do so is fairly obvious from the documentation

14    in relator's possession.

15        49.    The Pharmacy Call Back program involved telling the physician to fill out one line

16    in the Pharmacy Call Back form when therapy was initiated with Defendant's product. If a

17    pharmacist was calling regarding a particular prescription that the physician wrote, the physician was

18    to write down what the pharmacist said e.g. "Dr. may I switch this to generic?" Every line filled out

19    on the Pharmacy Call Back Form was worth about 15 minutes to the doctor. If the doctor filled up

20    4 lines of prescription call-backs, for instance, the physician received \$250 for an hour's worth of

21    work.

22        50.    The physician's duties for Managed Care Plans were analogous to the Pharmacy Call

23    Back. If the physician was called by the pharmacist from a managed care plan regarding Defendant's

24    drugs, (and therefore the Defendant's drugs were covered by the managed care plan), the physician

25    was paid, per line. Every 4 lines were worth \$250, for an hour of the physician's time.

26        Termination of the FMS Program and Conversion to Speaker Programs Only.

27        51.    The FMS program was discontinued on September 30, 2007, and the consultant's role

28    was to changed to speaking programs only. In other words, providers could receive payment from

1 Defendant as a "consultant" only for participating in speaker programs. With the sudden termination

2 of the FMS program, which had a variety of ways to pay a physician, planning for the transition to

3 the MDS program, only, was non-existent, and therefore sales temporarily suffered (because

4 kickbacks decreased temporarily).

5     52.    With the termination of the FMS program, the 2005 Consulting Agreement was

6 modified. The compensation provision in the new, 2007 Consulting Agreement, now tailored only

7 to speaking engagements, and provided only for a flat fee:

8         . . . Mallinckrodt will pay Consultant an Honorarium at the rate of $1500 per
standard event... a standard event is any speaking engagement or peer-to-peer
9         education event that occurs after standard business hours (9-5, Monday through
Friday) and within 100miles of Consultant's place of business. For events
10         occurring during business hours within 100 miles of Consultant's place of business
the rate will be 2/3 of the standard event rate or . . . $1,000. For events more than
11         100 miles from Consultant's place of business, regardless of time, the rate will be
2 times the standard rate or $3,000 to compensate the Consultant for additional
12         time involved with traveling but not limited to expenses (see below), though if
multiple events are planned in one extended trip, only the first will be paid at the
13         higher rate for travel while additional events during the same contiguous trip will
be paid at the appropriate rate for the event as if it was within 100 miles of the
14         consultant's place of business. Any expenses associated with events that are
incurred by the Consultant should be approved in advance and billed and paid
15         separately from Compensation described herein. In the event that the Consultant
is requested to provide assistance to Mallinckrodt on an hourly basis on a specific
16         project, then the rate for such hourly work will be $250 per hour.

17     53.    After September 30, 2007, Relator believes that the kickbacks have continued at the

18 same levels, but they have largely been paid through speaking engagements.

19 <center>OTHER VIOLATIONS</center>

20 Off-label Tofranil-PM

21     54.    Defendant was well aware that its sales force was marketing Tofranil (or its generic,

22 imipramine pamoate - IP) for off-label use, as they were directed to do so. From the beginning of

23 training, the sales force was prepped on the off-label uses of tricyclic antidepressants.

24     55.    Tofranil-PM was promoted off-label, in order of prescription prevalence, for pain

25 (fibromyalgia, body pain and neuropathies), migraines, sleep, and enuresis/incontinence (the latter

26 which involved some pediatrician prescribing).

27     56.    About 75% of all prescriptions of Tofranil-PM were written for these off-label uses.

28

<center>FALSE CLAIMS ACT COMPLAINT
- 13 -</center>

1   The targeted specialties called upon included: primary care physicians, neurologists,
2   gastroenterologists, occupational medicine physicians, orthopedists, anaesthesiologists, urologists
3   and rheumatologists. To help in their detailing, Defendant made 2 reprints authored by John Zajecka,
4   M.D. each having a paragraph referencing off-label uses of TCAs. These reprints were made
5   available to sales representatives for distribution to physicians regardless of practice specialty.

6       57.   In order to successfully carry out the off-label promotion, Defendant conducted
7   national sales meetings, regional and district meetings, designed specifically for the purpose of
8   training representatives on off-label sales and marketing practices.

9       58.   Indeed, Sales Representatives were trained on off-label marketing techniques such
10  as: (a) copying and distributing studies; (b) sales calls solely for the purpose of off-label selling; (c)
11  educating physicians on reimbursement/coding so that off-label claims would be covered for their
12  patients.

13      59.   Uniform and widespread tactics used by Defendant to promote off-label, in
14  conjunction with kickbacks, included hiding behind "CME" Speaker Programs via physicians and
15  other healthcare providers to promote off-label usage. These programs were controlled and
16  promoted by Defendant, and had little, if anything, to do with the advertised content of the program.

17      60.   As a result of these tactics, when physicians and pharmacies and possibly other
18  healthcare providers expressly certified, as a precondition to payment, that they would comply with
19  the terms set out on Form HCFA-1500 (which includes language that the services were "medically
20  indicated and necessary for the health of the patient") and other claims for payment, the claims they
21  submitted were false because the drugs were neither medically indicated and necessary, for the off-
22  label uses, under Government Healthcare Programs, as explained below.

23      Claims Submitted to Government Healthcare Programs Were Not Covered

24      61.   Although states may pay for any drug for any indication, they must do so without
25  (Federal Financial Participation) FFP if the drug, as prescribed, is not for a medically acceptable use.
26  FFP is available to states only for "covered outpatient drugs." 42 U.S.C. § 1396b(i)(10). "Covered
27  outpatient drugs" do not include drugs that are "used for a medical indication which is not  a
28

1  medically accepted indication." Id. § 1396r-8(k)(3). A medically accepted indication is defined as a
2  use "which is approved under the Federal Food Drug and Cosmetic Act" ("FDCA") or which is
3  "supported by one or more citations included or approved for inclusion" in specified drug compendia.
4  Id. § 1396r-8(k)(6). 42 U.S.C.§ 1396r-8(g)(1)(B)(I) identifies the compendia to be consulted:
5  American Hospital Formulary Service Drug Information; United States Pharmacopeia-Drug
6  Information; and the DRUGDEX Information System. The compendia will hereinafter be referred to
7  collectively as "the Drug Compendia."

8      62.   When pharmacies, physicians and other healthcare providers submitted claims based
9  upon a physician's prescription for Tofranil-PM for off-label uses, the claims they submitted were
10  false because such off-label uses were not supported by a citation in one of the Drug Compendia
11  specified by 42 U.S.C. § 1396r-8(g)(1)(B)(I).

12      63.   Medicare Part A is funded primarily by a federal payroll tax, premiums paid by
13  Medicare beneficiaries and appropriations from Congress. Medicare Part A generally pays for
14  inpatient services for eligible beneficiaries in hospital, hospice and skilled nursing facilities, as well
15  as some home healthcare services. 42 U.S.C. §§1395e - 42 U.S.C. §§1395i-5. Prescription drugs are
16  covered under Medicare Part A only if they are administered on an inpatient basis in a hospital or
17  similar setting.

18      64.   Medicare Part B is optional to beneficiaries and covers some healthcare benefits not
19  provided by Medicare Part A. Medicare Part B is funded by appropriations from Congress and
20  premiums paid by Medicare beneficiaries who choose to participate in the program. 42 U.S.C.
21  §§1395j - 42 U.S.C. §§1395w-4. Medicare Part B pays for some types of prescription drugs that are
22  not administered in a hospital setting. 42 U.S.C. §1395k(a); 42 U.S.C. §1395x(s)(2); 42 C.F.R.
23  §405.517.   These typically include drugs administered by a physician or other provider in an
24  outpatient setting, some orally administered anti-cancer drugs and antiemetics (drugs which control
25  the side effects caused by chemotherapy), and drugs administered through durable medical equipment
26  such as a nebulizer. 42 U.S.C. §1395k(a); 42 U.S.C. §1395x(s)(2); 42 C.F.R. §405.517.

27      65.   On January 1, 2006, Part D of the Medicare program began providing drug coverage
28  for all beneficiaries. The drug benefit covers all drugs that are considered "covered outpatient drugs"

1    under 42 U.S.C. §1396r-8(k). The off-label uses discussed herein are not supported by "clinical
2    research that appears in peer-reviewed medical literature," and could not, under any circumstances,
3    be determined to be "medically accepted generally as safe and effective" for such uses.

4        66.    In addition to Medicaid and Medicare, the federal government reimburses a portion
5    of the cost of prescription drugs under several other federal health care programs, including but not
6    limited to CHAMPUS/TRICARE, CHAMPVA and the Federal Employees Health Benefit Program.

7        67.    The off-label uses of Tofranil-PM promoted by Defendant were not eligible for
8    reimbursement under any of the various federal health care programs. Coverage of off-label drug use
9    under these programs is similar to coverage under the Medicaid program. See, e.g., TRICARE Policy
10   Manual 6010.47-M, Chapter 7, Section 7.1 (B) (2) (March 15, 2002); CHAMPVA Policy Manual,
11   Chapter 2, Section 22.1, Art. II (A)(2) (June 6, 2002).

12       68.    Defendant was aware that the natural and probable consequence of its promotion of
13   off-label uses of Tofranil-PM was that health care providers would submit claims for payment to
14   these and other government payors for the off-label use.

15       69.    Notwithstanding this knowledge, Defendant illegally, vigorously, and without any
16   thought to the possible negative health effects to which it subjected patients, promoted off-label uses
17   of Tofranil-PM. Defendant was aware that its illegal promotion did in fact result in false claims to
18   these and other government payors for the off-label use. Defendant was aware that its promotion
19   activities was a substantial factor in producing the claim.

20       70.    False claims to these government healthcare programs for off-label prescribing of
21   Tofranil-PM was the direct and proximate result of unlawful off-label marketing efforts by Defendant.
22   Defendant caused the submission of these claims.

23       71.    Defendant caused the submission of false claims, since healthcare providers submitted
24   Pharmacy Claim Forms and CMS-1500 Forms to Government Healthcare Programs, and the states
25   submitted Form CMS-64 to the Federal Government, all claiming reimbursement for Tofranil-PM
26   for such off-label uses.

27

28

1        Pricing Violations

2        72.    Pharmaceutical manufacturers participating in Medicaid programs must rebate to the
3    states, a certain statutorily-prescribed portion of the price of drugs purchased by each Medicaid
4    program in each state. See 42 U.S.C. §1396r-8(a)(1). Manufacturers do this because the Medicaid
5    statute, 42 U.S.C. §§1396a-u, permits the federal government to partially reimburse states only for
6    drugs purchased from manufacturers who have agreed to pay statutorily specified rebates to those
7    states. See 42 U.S.C. §1396r-8. Thus, pharmaceutical manufacturers that want their drugs available
8    to Medicaid beneficiaries under the Medicaid program enter into a Rebate Agreement with the
9    Department of Health and Human Services ("HHS") Secretary to provide rebates. See 42 U.S.C.
10   §1396r-8(a)(1).

11       73.    The Rebate Agreement requires manufacturers to submit a Quarterly Report (Form
12   CMS-367). The Quarterly Report includes information regarding each of the manufacturers'
13   "Covered" Drugs, including such information as its "Average Manufacturer Price" ("AMP"),
14   "Baseline AMP," and its "Best Price." Based upon this information, HHS, through its component
15   agency, The Centers for Medicare & Medicaid Services ("CMS"), then tells the states how much
16   rebate the state is entitled to collect with respect to each drug.

17       74.    Defendant entered into a Rebate Agreement with HHS. In that Agreement, Defendant
18   agreed to comply with 42 U.S.C. §1396r-8, and hence:

19             a.     Agreed to report its Best Price, inclusive of cash discounts, free goods
20   contingent upon any purchase requirements, volume discounts and rebates, etc.

21             b.     Agreed that it would determine its Best Price based upon its AMP, calculated
22   as "net sales divided by numbers of units sold, excluding free goods (i.e., drugs or any other items
23   given away, but not contingent on any purchase requirements)" and that it would include that in the
24   calculation, cash discounts and all other price reductions "which reduce the actual price paid"; and

25             c.     Agreed that the Best Price would not take into account nominal prices, defined
26   as prices that are less than 10 percent of the AMP in that quarter, so long as the sale of product at a
27   nominal price was not contingent on any other sale.

28       75.    After execution of this Agreement, Defendant reported its AMP and/or Best Price in

FALSE CLAIMS ACT COMPLAINT
- 17 -

10358207.tif - 4/7/2008 12:37:12 PM

1   each quarter, to the Medicaid Program on an electronic form of Form CMS-367.

2       76.     In the instance case, Defendant failed to take into account the Kickbacks it paid as well

3   as free goods, volume discounts, rebates, etc., when reporting its Best Price.

4       77.     As a result, Defendant's Best Price, for quarterly reports submitted for at least the past

5   6 years, were inflated, which reduced the percentage difference between AMP and Best Price, thereby

6   reducing the rebate amount that Defendant ultimately paid to each state Medicaid program.

7   Defendant artificially inflated its Best Price, by calculating its Best Price without taking into account

8   its inducement activities, which reduced the true cost of its drugs. Defendant did not take into

9   account all of the inducements described in this Complaint, such as phony drug trials, phony speaker

10  fees, phony preceptorships, phony speaker meetings, phony advisory panel meetings, and all other

11  inducements described herein.

12      78.     Defendant knowingly set and reported its Best Price for these drugs at levels far higher

13  than the actual Best Price, in Form CMS-367, submitted quarterly to CMS for at least the past 6 years.

14  By doing so, Defendant has violated the Federal (and applicable state) False Claims Acts, by

15  knowingly making, using, or causing to be made or used, a false record to conceal, avoid, or decrease

16  an obligation to pay or transmit money to federal and state governments.

17      79.     Under the Veterans Health Care Act of 1992 ("VHCA"), drug manufacturers are

18  required to enter a pricing agreement with the Secretary of HHS for the section 340B Drug Pricing

19  Program, and with the Department of Veterans Affairs (VA) and other Department of Defense

20  programs.

21      80.     Once a labeler/manufacturer enters into such a pricing agreement, its drugs are listed

22  on the Federal Supply Schedule ("FSS"), a price list containing over twenty-thousand pharmaceutical

23  products. The VA and other Government Programs depend on the FSS for most of its drug purchases,

24  with the exception of several national contracts awarded for specific drugs considered to be

25  therapeutically interchangeable.

26      81.     Under the VHCA, drug manufacturers must comply with 38 U.S.C. § 8126. Subsection

27  (a)(2) requires that "the price charged during the one-year period beginning on the date on which the

28  agreement takes effect may not exceed 76 percent of the non-Federal average manufacturer price (less

**FALSE CLAIMS ACT COMPLAINT**
- 18 -

1   the amount of any additional discount required under subsection (c)) ...."

2       82.     In the instant case, Defendant failed to take into account its inducements when
3   reporting the non-Federal average manufacturer price. Defendant therefore violated 38 U.S.C. §8126
4   causing damage to the VA program, and by not giving its best price as set forth in subsection (a)(2),
5   Defendant became ineligible for Medicare and other federal program reimbursement.

6                                        CONCLUSION

7       83.     The decision-making of the physician, that important element in Government Program
8   coverage policy was completely undermined by the unlawful marketing of Defendant. The physicians
9   prescribing Tofranil-PM (brand and generic) and Restoril did not necessarily do so because they
10  believed, based on their review of peer-reviewed medical literature, or discussions with their
11  colleagues, that the drugs would help their patients; rather the drugs were often prescribed because
12  the physicians were actively pursued by Defendant with kickbacks.

13                               COUNT I—FALSE CLAIMS ACT

14      84.     Relator realleges and incorporate by reference paragraphs 1 -84 as though fully set
15  forth herein.

16      85.     This is a claim by Relator, on behalf of The United States, for treble damages and
17  penalties under the False Claims Act, 31 U.S.C. 3729-3733 against Defendant for knowingly causing
18  to be presented false claims to Government Healthcare Programs.  From on or about January 2002
19  through present, in the Northern District of California and elsewhere throughout the United States,
20  Defendant has knowingly and willfully violated the False Claims Act by submitting and causing false
21  claims to be submitted.

22      86.     Defendant has knowingly caused pharmacies and other healthcare providers to submit
23  Pharmacy, CMS-1500, and other claim forms for payment, knowing that such false claims would be
24  submitted to state Government Healthcare Programs for reimbursement, and knowing that such
25  Government Healthcare Programs were unaware that they were reimbursing prescriptions for
26  prescriptions induced by kickbacks and/or for non-covered uses and therefore false claims. By virtue
27  of the acts described in this Complaint, Defendant knowingly presented or caused to be presented,
28  false or fraudulent claims to the United States Government for payment or approval, in violation of

31 U.S.C. §3729(a)(1) and 31 U.S.C. §3729(a)(2).

87. For Tofranil-PM in particular, Defendant also knowingly made, used, or caused to be made or used false records and/or statements to get false or fraudulent claims paid or approved by the Government. Each prescription that was written as a result of Defendant's illegal marketing practices and illegal kickbacks represents a false or fraudulent record or statement.

88. Defendant has violated 31 U.S.C. §3729(a)(2) by causing the states to submit false claims to the United States Government in Form CMS-64 (Quarterly Medicaid Statement of Expenditures for the Medical Assistance Program), which falsely certified that all drugs for which federal reimbursement was sought, including Tofranil-PM, were paid for in compliance with federal law. States submitted false claims to the United States Government because when Tofranil-PM was prescribed off-label, it was not prescribed for a medically accepted indication, yet states sought reimbursement from the United States Government for all Tofranil-PM expenditures.

89. Defendant caused false claims to be submitted, resulting in Government Program reimbursement to healthcare providers in the millions of dollars, in violation of the False Claims Act, 31 U.S.C. §3729 et. seq. and the Anti-Kickback Act 42 U.S.C. §1320a-7b(b)(2)(A).

90. The United States is entitled to three times the amount by which it was damaged, to be determined at trial, plus a civil penalty of not less than $5,500.00 and not more than $11,000.00 for each false claim presented or caused to be presented.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendant, as follows:

(a) That the United States be awarded damages in the amount of three times the damages sustained by the U.S. because of the false claims alleged within this Complaint, as the Federal Civil False Claims Act, 31 U.S.C. § 3729 et seq. provides;

(b) That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the Government Healthcare Programs under the Federal False Claims Act;

(c) That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d) That the Relator be awarded the maximum amount allowed pursuant to the Federal False Claims Act; and

(e) That the Court award such other and further relief as it deems proper.

1
2

COUNT II
ILLINOIS WHISTLEBLOWER REWARD & PROTECTION ACT

3    91.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 84
4 above as if fully set forth herein.

5    92.    This is a *qui tam* action brought by RELATOR on behalf of the State of Illinois to
6 recover treble damages and civil penalties under the Illinois Whistleblower Reward and Protection
7 Act, 740 ILCS 175 *et seq.*

8    740 ILCS 175/3(a) provides liability for any person who:

9        (1)    knowingly presents, or causes to be presented, to an officer or
           employee of the State of a member of the Guard a false or fraudulent
10         claim for payment or approval;
           (2)    knowingly makes, uses, or causes to be made or used, a false
11         record or statement to get a false or fraudulent claim paid or approved
           by the State;
12         (3)    conspires to defraud the State by getting a false or fraudulent
           claim allowed or paid.
13

14    93.    In addition, 305 ILCS 5/8A-3(b) of the Illinois Public Aid Code (Vendor Fraud and
15 Kickbacks) prohibits the solicitation or receipt of any remuneration, including any kickback, bribe
16 or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any item
17 or service for which payment may be made in whole or in part under the Illinois Medicaid program.

18    94.    Defendant violated 305 ILCS 5/8A-3(b) by engaging in the conduct described herein.

19    95.    Defendant furthermore violated 740 ILCS 175/3(a) and knowingly caused hundreds
20 of thousands of false claims to be made, used and presented to the State of Illinois by its deliberate
21 and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act,
22 and the Illinois Vendor Fraud and Kickback statute, and by virtue of the fact that none of the claims
23 submitted in connection with its conduct were even eligible for reimbursement by the government-
24 funded healthcare programs.

25    96.    The State of Illinois, by and through the Illinois Medicaid program and other state
26 healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare
27 providers and third party payers in connection therewith.

28    97.    Compliance with applicable Medicare, Medicaid and the various other federal and

FALSE CLAIMS ACT COMPLAINT
- 21 -

10358208.tif - 4/7/2008 12:41:24 PM

1  state laws cited herein was an implied, and upon information and belief, also an express condition of
2  payment of claims submitted to the State of Illinois in connection with Defendant's conduct.
3  Compliance with applicable Illinois statutes, regulations and Pharmacy Manuals was also an express
4  condition of payment of claims submitted to the State of Illinois.

5       98.    Had the State of Illinois known that Defendant was violating the federal and state laws
6  cited herein and/or that the claims submitted in connection with Defendant conduct failed to meet the
7  reimbursement criteria of the government-funded healthcare programs or were premised on false
8  and/or misleading information, it would not have paid the claims submitted by healthcare providers
9  and third party payers in connection with that conduct.

10      99.    As a result of Defendant's violations of 740 ILCS 175/3(a), the State of Illinois has
11  been damaged in an amount far in excess of millions of dollars exclusive of interest.

12      100.   Relator is a private citizen with direct and independent knowledge of the allegations
13  of this Complaint, who have brought this action pursuant to 740 ILCS 175/3(b) on behalf of
14  themselves and the State of Illinois.

15      101.   This Court is requested to accept pendant jurisdiction of this related state claim as it
16  is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to
17  the State of Illinois in the operation of its Medicaid program.

18      WHEREFORE, RELATOR respectfully requests this Court to award the following damages
19  to the following parties and against Defendant:

20  To the STATE OF ILLINOIS:
          (1)   Three times the amount of actual damages which the State of Illinois has
21              sustained as a result of Defendant's conduct;
          (2)   A civil penalty of not less than $5,000 and not more than $10,000 for each
22              false claim which Defendant caused to be presented to the State of Illinois;
          (3)   Prejudgment interest; and
23        (4)   All costs incurred in bringing this action.

24  To RELATOR:

25        (1)   The maximum amount allowed pursuant to 740 ILCS 175/4(d) and/or any
                other applicable provision of law;
26        (2)   Reimbursement for reasonable expenses which Relator incurred in connection
                with this action;
27        (3)   An award of reasonable attorneys' fees and costs; and
          (4)   Such further relief as this Court deems equitable and just.
28

1
                                  COUNT III
                   CALIFORNIA FALSE CLAIMS ACT

2

3      102.   Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 84

4  above as if fully set forth herein.

5      103.   This is a *qui tam* action brought by RELATOR on behalf of the State of California to

6  recover treble damages and civil penalties under the California False Claims Act, Cal. Gov't. Code

7  § 12650 *et seq.*

8      104.   Cal. Gov't Code § 12651(a) provides liability for any person who

9            (1) knowingly presents, or causes to be presented, to an officer or
              employee of the state or of any political division thereof; a false claim

10          for payment or approval;
             (2) knowingly makes, uses, or causes to be made or used a false record

11          or statement to get a false claim paid or approved by the state or by any
             political subdivision;

12          (3) conspires to defraud the state or any political subdivision by getting
             a false claim allowed or paid by the state or by any political

13          subdivision.
             (4) is a beneficiary of an inadvertent submission of a false claim to the

14          state or a political subdivision, subsequently discovers the falsity of
             the claim, and fails to disclose the false claim to the state or the

15          political subdivision within a reasonable time after discovery of the
             false claim.

16

17      105.   In addition, the payment or receipt of bribes or kickbacks is prohibited under Cal. Bus.

18  & Prof. Code § 650 and 650.1, and is also specifically prohibited in treatment of Medi-Cal patients

19  pursuant to Cal. Welf. & Inst. Code §14107.2.

20      106.   Defendant violated Cal. Bus. & Prof. Code § 650 and 650.1 and Cal. Welf. & Inst.

21  Code § 14107.2 by engaging in the conduct described herein.

22      107.   Defendant furthermore violated Cal. Gov't Code § 12651(a) and knowingly caused

23  hundreds of thousands of false claims to be made, used and presented to the State of California  by

24  its deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-

25  Kickback Act, Cal. Bus. & Prof. Code § 650-650.1 and Cal. Welf. & Inst. Code § 14107.2 and by

26  virtue of the fact that none of the claims submitted in connection with its conduct were even eligible

27  for reimbursement by the government funded healthcare programs.

28      108.   The State of California, by and through the California Medicaid program and other

1  state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by

2  healthcare providers and third party payers in connection therewith.

3          109.   Compliance with applicable Medicare, Medi-Cal and the various other federal and

4  state laws cited herein was an implied, and upon information and belief; also an express condition of

5  payment of claims submitted to the State of California in connection with Defendant's conduct.

6  Compliance with applicable California statutes, regulations and Pharmacy Manuals was also an

7  express condition of payment of claims submitted to the State of California.

8          110.   Had the State of California known that Defendant was violating the federal and state

9  laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to

10  meet the reimbursement criteria of the government-funded healthcare programs or were premised on

11  false and/or misleading information, it would not have paid the claims submitted by healthcare

12  providers and third party payers in connection with that conduct.

13          111.   As a result of Defendant's violations of Cal. Gov't Code § 12651(a), the State of

14  California has been damaged in an amount far in excess of millions of dollars exclusive of interest.

15          112.   RELATOR is a private citizen with direct and independent knowledge of the

16  allegations of this Complaint, who has brought this action pursuant to Cal. Gov't Code § 12652(c)

17  on behalf of themselves and the State of California.

18          113.   This Court is requested to accept pendant jurisdiction over this related state claim as

19  it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages

20  to the State of California in the operation of its Medicaid program.

21          WHEREFORE, RELATOR respectfully requests this Court to award the following damages

22  to the following parties and against Defendant:

23      To the STATE OF CALIFORNIA:
            (1)   Three times the amount of actual damages which the State of California has
24                sustained as a result of Defendant's conduct;
            (2)   A civil penalty of up to $10,000 for each false claim which Defendant
25                presented or caused to be presented to the State of California;
            (3)   Prejudgment interest; and
26          (4)   All costs incurred in bringing this action.

27      To RELATOR:

28          (1)   The maximum amount allowed pursuant to Cal. Gov't Code § 12652 and/or

FALSE CLAIMS ACT COMPLAINT
- 24 -

10358208.tif - 4/7/2008 12:41:24 PM

1          any other applicable provision of law;
      (2)   Reimbursement for reasonable expenses which Relator incurred in connection
2          with this action;
      (3)   An award of reasonable attorneys' fees and costs; and
3      (4)   Such further relief as this Court deems equitable and just.

4

5                                    COUNT IV
                             FLORIDA FALSE CLAIMS ACT

6

7      114.   Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 84

8   above as if fully set forth herein.

9      115.   This is a *qui tam* action brought by RELATOR on behalf of the State of Florida to

10   recover treble damages and civil penalties under the Florida False Claims Act, Fla. Stat. § 68.081 *et*

11   *seq.*

12      116.   Fla. Stat. § 68.082(2) provides liability for any person who-

13
            (a) knowingly presents, or causes to be presented, to an officer or
14         employee of an agency a false or fraudulent claim for payment or
            approval;
15         (b) knowingly makes, uses, or causes to be made or used, a false
            record or statement to get a false or fraudulent claim paid or approved
16         by an agency;
            (c) conspires to submit a false claim to an agency or to deceive an
17         agency for the purpose of getting a false or fraudulent claim allowed-
            or paid.
18
       117.   In addition, Fla. Stat. § 409.920 makes it a crime to:
19
            (c) knowingly charge, solicit, accept, or receive anything of value,
20         other than an authorized copayment from a Medicaid recipient, from
            any source in addition to the amount legally payable for an item or
21         service provided to a Medicaid recipient under the Medicaid program
            or knowingly fail to credit the agency or its fiscal agent for any
22         payment received from a third-party source;
                                 * * *
23         (e) knowingly, solicit, offer, pay or receive any remuneration,
            including any kickback, bribe or rebate, directly or indirectly, overtly
24         or covertly, in cash or in kind, in return for referring an individual to
            a person for the furnishing of any item or service for which payment
25         may be made, in whole or in part, under the Medicaid program, or in
            return for obtaining, purchasing, leasing, ordering, or arranging, for or
26         recommending, obtaining, purchasing, leasing, or ordering any goods,
            facility, item, or service, for which payment may be made, in whole or
27         in part, under the Medicaid program.

28

                              **FALSE CLAIMS ACT COMPLAINT**
                                        - 25 -

1    118.    Fla. Stat. §456.054(2) also prohibits the offering, payment, solicitation, or receipt of
2  a kickback to a healthcare provider, whether directly or indirectly, overtly or covertly, in cash or in
3  kind, in exchange for referring or soliciting patients.

4    119.    Defendant violated Fla. Stat. § 409.920(c) and (e) and §456.054(2) by engaging in the
5  conduct described herein.

6    120.    Defendant furthermore violated Fla. Stat. § 68.082(2) and knowingly caused hundreds
7  of thousands of false claims to be made, used and presented to the State of Florida by its deliberate
8  and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act,
9  Fla. Stat. § 409.920(c) and (e) and §456.054(2) and by virtue of the fact that none of the claims
10  submitted in connection with its conduct were even eligible for reimbursement by the government-
11  funded healthcare programs.

12    121.    The State of Florida, by and through the Florida Medicaid program and other state
13  healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare
14  providers and third party payers in connection therewith.

15    122.    Compliance with applicable Medicare, Medicaid and the various other federal and
16  state laws cited herein was an implied, and upon information and belief, also an express condition of
17  payment of claims submitted to the State of Florida in connection with Defendant's conduct.
18  Compliance with applicable Florida statutes, regulations and Pharmacy Manuals was also an express
19  condition of payment of claims submitted to the State of Florida.

20    123.    Had the State of Florida known that Defendant was violating the federal and state laws
21  cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet
22  the reimbursement criteria of the government-funded healthcare programs or were premised on false
23  and/or misleading information, it would not have paid the claims submitted by healthcare providers
24  and third party payers in connection with that conduct.

25    124.    As a result of Defendant's violations of Fla. Stat. § 68.082(2), the State of Florida has
26  been damaged in an amount far in excess of millions of dollars exclusive of interest.

27    125.    RELATOR is a private citizen with direct and independent knowledge of the
28  allegations of this Complaint, who has brought this action pursuant to Fla. Stat. § 68.083(2) on behalf

1 | of themselves and the State of Florida.

2     126.    This Court is requested to accept pendant jurisdiction of this related state claim as it

3 | is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to

4 | the State of Florida in the operation of its Medicaid program.

5     WHEREFORE, RELATOR respectfully request this Court to award the following damages

6 | to the following parties and against Defendant:

7     To the STATE OF FLORIDA:

8     (1)    Three times the amount of actual damages which the State of Florida has sustained as a result of Defendant's conduct;

9     (2)    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendant caused to be presented to the State of Florida

10     (3)    Prejudgment interest; and
    (4)    All costs incurred in bringing this action.

11     To RELATOR:

12     (1)    The maximum amount allowed pursuant to Fla. Stat. § 68.085 and/or any other applicable provision of law;

13     (2)    Reimbursement for reasonable expenses which Relator incurred in connection with this action,

14     (3)    An award of reasonable attorneys' fees and costs; and

15     (4)    Such further relief as this Court deems equitable and just.

16     **COUNT V**
    **TEXAS FALSE CLAIMS ACT**

17

18     127.    Plaintiff repeats and realleges each allegation contained in paragraphs I through 84

19 | above as if fully set forth herein.

20     128.    This is a *qui tam* action brought by RELATOR on behalf of the State of Texas to

21 | recover double damages and civil penalties under V.T.C.A. Hum. Res. Code § 36.001 *et seq.*

22     129.    V.T.C.A. Hum. Res. Code § 36.002 provides liability for any person who-

23     (1) knowingly or intentionally makes or causes to be made a false statement or misrepresentation of a material fact:

24     (a) on an application for a contract, benefit, or payment under the Medicaid program; or

25     (b) that is intended to be used to determine its eligibility for a benefit or payment under the Medicaid

26     program.

27     (2)    knowingly or intentionally concealing or failing to disclose an event:

28     (a) that the person knows affects the initial or

continued right to a benefit or payment under the
Medicaid program of.
    (I)    the person, or
    (ii)    another person on whose behalf
the person has applied for a benefit or
payment or is receiving a benefit or
payment; and
(b) to permit a person to receive a benefit or payment
that is not authorized or that is greater than the
payment or benefit that is authorized;

(4)    knowingly or intentionally makes, causes to be made, induces,
or seeks to induce the making of a false statement or misrepresentation
of material fact concerning:
    (b) information required to be provided by a federal or
state law, rule, regulation, or provider agreement
pertaining to the Medicaid program;

(5)    knowingly or intentionally charges, solicits, accepts, or
receives, in addition to an amount paid under the Medicaid program,
a gift, money, a donation, or other consideration as a condition to the
provision of a service or continued service to a Medicaid recipient if
the cost of the service provided to the Medicaid recipient is paid for,
in whole or in part, under the Medicaid program.

130.    Defendant violated V.T.C.A. Hum. Res. Code § 36.002 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Texas by its deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-kickback Act and § 36.002, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

131.    The State of Texas, by and through the Texas Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

132.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Texas in connection with Defendant's conduct. Compliance with applicable Texas statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of Texas.

133.    Had the State of Texas known that Defendant was violating the federal and state laws

1 cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet
2 the reimbursement criteria of the government-funded healthcare programs or were premised on false
3 and/or misleading information, it would not have paid the claims submitted by healthcare providers
4 and third party payers in connection with that conduct.

5    134.   As a result of Defendant's violations of V.T.C.A. Hum. Res. Code § 36.002, the State
6 of Texas has been damaged in an amount far in excess of millions of dollars exclusive of interest.

7    135.   Defendant did not, within 30 days after it first obtained information as to such
8 violations, furnish such information to officials of the State responsible for investigating false claims
9 violations, did not otherwise fully cooperate with any investigation of the violations, and have not
10 otherwise furnished information to the State regarding the claims for reimbursement at issue.

11    136.   RELATOR is a private citizen with direct and independent knowledge of the
12 allegations of this Complaint, who has brought this action pursuant to V.T.C.A. Hum. Res. Code §
13 36.101 on behalf of themselves and the State of Texas.

14    137.   This Court is requested to accept pendant jurisdiction of this related state claim as it
15 is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to
16 the State of Texas in the operation of its Medicaid program.

17    WHEREFORE, RELATOR respectfully requests this Court to award the following damages
18 to the following parties and against Defendant:

19    To the STATE OF TEXAS:

20    (1)   Two times the amount of actual damages which the State of Texas has sustained as a result of Defendant's conduct;
21    (2)   A civil penalty of not less than $10,000 pursuant to V.T.C.A. Hum.. Res. Code § 36.025(a)(3) for each false claim which Defendant cause to be presented to
22    the state of Texas;
   (3)   Prejudgment interest; and
23    (4)   All costs incurred in bringing this action.

24    To RELATOR:

25    (1)   The maximum amount allowed pursuant to V.T.C.A. Hum. Res. Code § 36.110, and/or any other applicable provision of law;
26    (2)   Reimbursement for reasonable expenses which Relator incurred in connection with this action;
27    (3)   An award of reasonable attorneys' fees and costs; and
   (4)   Such further relief as this Court deems equitable and just.
28

**FALSE CLAIMS ACT COMPLAINT**
- 29 -

1

2                                              COUNT VI
                                    MASSACHUSETTS FALSE CLAIMS ACT
3

4         138.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 84

5    above as if fully set forth herein.

6         139.    This is a *qui tam* action brought by RELATOR on behalf of the Commonwealth of

7    Massachusetts for treble damages and penalties under Massachusetts False Claims Act, Mass. Gen.

8    Laws Ann. Chap. 12 § 5(A) *et seq.*

9         140.    Mass. Gen. Laws Ann. Chap. 12 § 5B provides liability for any person who-

10
                        (1)    knowingly presents, or causes to be presented, a false or
11                      fraudulent claim for payment or approval;
                        (2)    knowingly makes, uses, or causes to be made or used, a false
12                      record or statement to obtain payment or approval of a claim by the
                        commonwealth or
13                      (3)    conspires to defraud the commonwealth or any political
                        subdivision thereof through the allowance or payment of a fraudulent
14                      claim;
                        (9)    is a beneficiary of an inadvertent submission of a false claim
15                      to the common wealth or political subdivision thereof, subsequently
                        discovers the falsity of the claim, and fails to disclose the false claim
16                      to the commonwealth or political subdivision within a reasonable time
                        after discovery of the false claim.
17

18        141.    In addition, Mass. Gen. Laws Ann. Chap. 118E § 41 prohibits the solicitation, receipt

19   or offering of any remuneration, including any bribe or rebate, directly or indirectly, overtly or

20   covertly, in cash or in kind in return for furnishing any good, service or item for which payment may

21   be made in whole or in part under the Massachusetts Medicaid program.

22        142.    Defendant violated Mass. Gen. Laws Ann. Chap. 118E § 41  by engaging in the

23   conduct described herein.

24        143.    Defendant furthermore violated Mass. Gen. Laws Ann. Chap. 12 § 5B and knowingly

25   caused hundreds of thousands of false claims to be made, used and presented to the Commonwealth

26   of Massachusetts by its deliberate and systematic violation of federal and state laws, including the

27   FDCA, federal Anti-Kickback Act, Mass. Gen. Law Ann. Chap. 118E § 41 and by virtue of the fact

28   that none of the claims submitted in connection with its conduct were even eligible for reimbursement

                                    **FALSE CLAIMS ACT COMPLAINT**
                                                  - 30 -

1 by the government-funded healthcare programs.

2     144.    The Commonwealth of Massachusetts, by and through the Massachusetts Medicaid
3 program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims
4 submitted by healthcare providers and third party payers in connection therewith.

5     145.    Compliance with applicable Medicare, Medicaid and the various other federal and
6 state laws cited herein was an implied, and upon information and belief: also an express condition of
7 payment of claims submitted to the Commonwealth of Massachusetts in connection with Defendant's
8 conduct. Compliance with applicable Massachusetts statutes, regulations and Pharmacy Manuals was
9 also an express condition of payment of claims submitted to the Commonwealth of Massachusetts.

10     146.    Had the Commonwealth of Massachusetts known that Defendant was violating the
11 federal and state laws cited herein and/or that the claims submitted in connection with Defendant's
12 conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or
13 were premised on false and/or misleading information, it would not have paid the claims submitted
14 by healthcare providers and third party payers in connection with that conduct.

15     147.    As a result of Defendant's violations of Mass. Gen. Laws Ann. Chap. 12 § 5B, the
16 Commonwealth of Massachusetts has been damaged in an amount far in excess of millions of dollars
17 exclusive of interest.

18     148.     RELATOR is a private citizen with direct and independent knowledge of the
19 allegations of this Complaint, who has brought this action pursuant to Mass. Gen. Laws Ann. Chap.
20 12 § 5(c)(2) on behalf of themselves and the Commonwealth of Massachusetts.

21 149.    This Court is requested to accept pendant jurisdiction of this related state claim as it
22 is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to
23 the Commonwealth of Massachusetts in the operation of its Medicaid program.

24     WHEREFORE, RELATOR respectfully requests this Court to award the following damages
25 to the following parties and against Defendant:

26     To the Commonwealth OF MASSACHUSETTS:

27
28     (1)    Three times the amount of actual damages which the Commonwealth of
        Massachusetts has sustained as a result of Defendant's conduct;

**FALSE CLAIMS ACT COMPLAINT**
- 31 -

1        (2)    A civil penalty of not less than $5,000 and not more than $10,000 for each
                false claim which Defendant caused to be presented to the Commonwealth of
2               Massachusetts;
         (3)    Prejudgment interest; and
3        (4)    All costs incurred in bringing this action.

4    To RELATOR:

5        (1)    The maximum amount allowed pursuant to Mass. Gen. Laws Ann. Chap. 12,
                §5F and/or any other applicable provision of law;
6        (2)    Reimbursement for reasonable expenses which Relator incurred in connection
                with this action;
7        (3)    An award of reasonable attorneys' fees and costs; and
         (4)    Such further relief as this Court deems equitable and just.

8

9                                    COUNT VII
                          TENNESSEE FALSE CLAIMS ACT
10

11       150.   Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 84

12   above as if fully set forth herein.

13       151.   This is a *qui tam* action brought by RELATOR on behalf of the State of Tennessee to

14   recover treble damages and civil penalties under the Tennessee Medicaid False Claims Act, Tenn.

15   Code Ann. § 71-5-181 *et seq.*

16       § 71-5-182(a)(1) provides liability for any person who-

17            (A)  presents, or causes to be presented to the state, a claim for
                   payment under the Medicaid program knowing such claim is false or
18            fraudulent;
              (B)  makes or uses, or causes to be made or used, a record or statement
19            to get a false or fraudulent claim under the Medicaid program paid for
              or approved by the state knowing such record or statement is false;
20            (C)  conspires to defraud the State by getting a claim allowed or paid
              under the Medicaid program knowing such claim is false or fraudulent.

21
         152.   Defendant violated Tenn. Code Ann. § 71-5-1 82(a)(1) and knowingly caused
22
     hundreds of thousands of false claims to be made, used and presented to the State of Tennessee by
23
     its deliberate and systematic violation of federal and state laws, including the FDCA and Anti-
24
     Kickback Act, and by virtue of the fact that none of the claims submitted in connection with its
25
     conduct were even eligible for reimbursement by the government-funded healthcare programs.
26
         153.   The State of Tennessee, by and through the Tennessee Medicaid program and other
27
     state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by
28

                                   FALSE CLAIMS ACT COMPLAINT
                                              - 32 -

1 healthcare providers and third party payers in connection therewith.

2     154.   Compliance with applicable Medicare, Medicaid and the various other federal and
3 state laws cited herein was an implied, and upon information and belief, also an express condition of
4 payment of claims submitted to the State of Tennessee in connection with Defendant's conduct.
5 Compliance with applicable Tennessee statutes, regulations and Pharmacy Manuals was also an
6 express condition of payment of claims submitted to the State of Tennessee.

7     155.   Had the State of Tennessee known that Defendant was violating the federal and state
8 laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to
9 meet the reimbursement criteria of the government-funded healthcare programs or were premised on
10 false and/or misleading information, it would not have paid the claims submitted by healthcare
11 providers and third party payers in connection with that conduct.

12     156.   As a result of Defendant's violations of Tenn. Code Ann. § 71-5-182(a)(1), the State
13 of Tennessee has been damaged in an amount far in excess of millions of dollars exclusive of interest.

14     157.   RELATOR is a private citizen with direct and independent knowledge of the
15 allegations of this Complaint, who has brought this action pursuant to Tenn. Code Ann. § 71-5-
16 183(a)(1) on behalf of themselves and the State of Tennessee.

17     158.   This Court is requested to accept pendant jurisdiction of this related state claim as it
18 is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to
19 the State of Tennessee in the operation of its Medicaid program.

20     WHEREFORE, RELATOR respectfully requests this Court to award the following damages
21 to the following parties and against Defendant:

22     To the STATE OF TENNESSEE:

23
24     (1)   Three times the amount of actual damages which the State of Tennessee has
            sustained as a result of Defendant's conduct;
    (2)   A civil penalty of not less than $5,000 and not more than $10,000 for each
25             false claim which Defendant caused to be presented to the State of Tennessee;
    (3)   Prejudgment interest; and
26     (4)   All costs incurred in bringing this action.

27     To RELATOR:

28     (1)   The maximum amount allowed pursuant to Tenn. Code Ann. § 71-5-183(c)

1                   and/or any other applicable provision of law;
               (2)   Reimbursement for reasonable expenses which Relator incurred in connection

2                     with this action;
               (3)   An award of reasonable attorneys' fees and costs; and

3                (4)   Such further relief as this Court deems equitable and just.

4                            COUNT VIII
           DELAWARE FALSE CLAIMS AND REPORTING ACT

5

6        159.   Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 84

7 above as if fully set forth herein.

8        160.   This is a *qui tam* action brought by RELATOR on behalf of the State of Delaware to

9 recover treble damages and civil penalties under the Delaware False Claims and Reporting Act, Title

10 6, Chapter 12 of the Delaware Code.

11        6 Del. C. § 1201(a) provides liability for any person who-

12           (1)  knowingly presents, or causes to be presented, directly or
indirectly, to an officer or employee of the Government a false or

13           fraudulent claim for payment or approval;
          (2) knowingly makes, uses, or causes to be made or used, directly or

14           indirectly, a false record or statement to get a false or fraudulent claim
          paid or approved; or

15           (3)  conspires to defraud the Government by getting a false or
          fraudulent claim allowed or paid.

16

17        161.   In addition, 31 Del. C. § 1005 prohibits the solicitation or receipt of any remuneration

18 (including kickbacks, bribes or rebate) directly or indirectly, overtly or covertly, in cash or in kind in

19 return for the furnishing of any medical care or services for which payment may be made in whole

20 or in part under any public assistance program.

21        162.   Defendant violated 31 Del. C. § 1005 by engaging in the conduct described herein.

22        163.   Defendant furthermore violated 6 Del. C. § 1201(a) and knowingly caused hundreds

23 of thousands of false claims to be made, used and presented to the State of Delaware by its deliberate

24 and systematic violation of federal and state laws, including the FDCA, the Anti-Kickback Act, and

25 31 Del. C. § 1005 and by virtue of the fact that none of the claims submitted in connection with its

26 conduct were even eligible for reimbursement by the government-funded healthcare programs.

27        164.   The State of Delaware, by and through the Delaware Medicaid program and other state

28 healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare

1 │ providers and third party payers in connection therewith.

2 │     165.    Compliance with applicable Medicare, Medicaid and the various other federal and
3 │ state laws cited herein was an implied, and upon information and belief, also an express condition of
4 │ payment of claims submitted to the State of Delaware in connection with Defendant's conduct.
5 │ Compliance with applicable Delaware statutes, regulations and Pharmacy Manuals was also an
6 │ express condition of payment of claims submitted to the State of Delaware.

7 │     166.    Had the State of Delaware known that Defendant was violating the federal and state
8 │ laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to
9 │ meet the reimbursement criteria of the government-funded healthcare programs or were premised on
10 │ false and/or misleading information, it would not have paid the claims submitted by healthcare
11 │ providers and third party payers in connection with that conduct.

12 │     167.    As a result of Defendant's violations of 6 Del. C. § 1201(a), the State of Delaware has
13 │ been damaged in an amount far in excess of millions of dollars exclusive of interest.

14 │     168.    RELATOR is a private citizen with direct and independent knowledge of the
15 │ allegations of this Complaint, who has brought this action pursuant to 6 Del. C. § 1203(b) on behalf
16 │ of themselves and the State of Delaware.

17 │     169.    This Court is requested to accept pendant jurisdiction of this related state claim as it
18 │ is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to
19 │ the State of Delaware in the operation of its Medicaid program.

20 │     WHEREFORE, RELATOR respectfully requests this Court to award the following damages
21 │ to the following parties and against Defendant:

22 │ To the STATE OF DELAWARE:

23 │
24 │     (1)    Three times the amount of actual damages which the State of Delaware has
           sustained as a result of Defendant's conduct;
    (2)    A civil penalty of not less than $5,500 and not more than $11,000 for each
25 │            false claim which Defendant caused to be presented to the State of Delaware;
    (3)    Prejudgment interest; and
26 │     (4)    All costs incurred in bringing this action.

27 │
28 │

**FALSE CLAIMS ACT COMPLAINT**
- 35 -

1    To RELATOR:

2              (1)    The maximum amount allowed pursuant to 6 Del C. § 1205, and/or any other
                     applicable provision of law;
3              (2)    Reimbursement for reasonable expenses which Relator incurred in connection
                     with this action;
4              (3)    An award of reasonable attorneys' fees and costs; and
               (4)    Such further relief as this Court deems equitable and just.
5
                                         COUNT IX
6                              NEVADA FALSE CLAIMS ACT

7          170.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 84

8    above as if fully set forth herein.

9          171.    This is a *qui tam* action brought by RELATOR on behalf of the State of Nevada to

10   recover treble damages and civil penalties under the Nevada False Claims Act, N.R.S. § 357.010, *et.*

11   *seq.*

12         172.    N.R.S. § 357.040(1) provides liability for any person who-

13              (a) knowingly presents or causes to be presented a false claim for
14              payment or approval;
                (b) knowingly makes or uses, or causes to be made or used, a false
15              record or statement to obtain payment or approval of a false claim
                (c) conspires to defraud by obtaining allowance or payment of a false
16              claim;
                (h) is a beneficiary of an inadvertent submission of a false claim and,
17              after discovering the falsity of the claim, fails to disclose the falsity to
                the state or political subdivision within a reasonable time.

18         173.    In addition, N.R.S. § 422.560 prohibits the solicitation, acceptance or receipt of

19   anything of value in connection with the provision of medical goods or services for which payment

20   may be made in whole or in part under the Nevada Medicaid program.

21         174.    Defendant violated N.R.S. § 422.560 by engaging in the conduct described herein.

22         175.    Defendant furthermore violated N.R.S. § 357.040(1) and knowingly caused hundreds

23   of thousands of false claims to be made, used and presented to the State of Nevada by its deliberate

24   and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act

25   and N.R.S. § 422.560, and by virtue of the fact that none of the claims submitted in connection with

26   its conduct were even eligible for reimbursement by the government-funded healthcare programs.

27         176.    The State of Nevada, by and through the Nevada Medicaid program and other state

28

                                    FALSE CLAIMS ACT COMPLAINT
                                              - 36 -

1  healthcare programs, and unaware of Defendant' conduct, paid the claims submitted by healthcare
2  providers and third party payers in connection therewith.

3      177.   Compliance with applicable Medicare, Medicaid and the various other federal and
4  state laws cited herein was an implied, and upon information and belief, also an express condition of
5  payment of claims submitted to the State of Nevada in connection with Defendant's conduct.
6  Compliance with applicable Nevada statutes, regulations and Pharmacy Manuals was also an express
7  condition of payment of claims submitted to the State of Nevada.

8      178.   Had the State of Nevada known that Defendant was violating the federal and state laws
9  cited herein and/or that the claims submitted in connection with Defendant' conduct failed to meet
10  the reimbursement criteria of the government-funded healthcare programs or were premised on false
11  and/or misleading information, it would not have paid the claims submitted by healthcare providers
12  and third party payers in connection with that conduct.

13     179.   As a result of Defendant's violations of N.R.S. § 357.040(1) the State of Nevada has
14  been damaged in an amount far in excess of millions of dollars exclusive of interest.

15     180.   RELATOR is a private citizen with direct and independent knowledge of the
16  allegations of this Complaint, who has brought this action pursuant to N.R.S. § 357.080(1) on behalf
17  of themselves and the State of Nevada.

18     181.   This Court is requested to accept pendant jurisdiction of this related state claim as it
19  is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to
20  the State of Nevada in the operation of its Medicaid program.

21     WHEREFORE, RELATOR respectfully requests this Court to award the following damages
22  to the following parties and against Defendant:

23     To the STATE OF NEVADA:

24         (1)  Three times the amount of actual damages which the State of Nevada has
               sustained as a result of Defendant's conduct;
25         (2)  A civil penalty of not less than $2,000 and not more than $10,000 for each
               false claim which Defendant caused to be presented to the State of Nevada;
26         (3)  Prejudgment interest; and
           (4)  All costs incurred in bringing this action.
27
28

FALSE CLAIMS ACT COMPLAINT
- 37 -
10358209.tif - 4/7/2008 12:45:24 PM

1      To RELATOR:

2              (1)    The maximum amount allowed pursuant to N.R.S. § 357.210 and/or any other
                      applicable provision of law;
3              (2)    Reimbursement for reasonable expenses which Relator incurred in connection
                      with this action;
4              (3)    An award of reasonable attorneys' fees and costs; and
               (4)    Such further relief as this Court deems equitable and just.
5

6
                                        COUNT X
7                    LOUISIANA MEDICAL ASSISTANCE PROGRAMS INTEGRITY LAW

8
        182.   Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 84
9
      above as if fully set forth herein.
10
        183.   This is a *qui tam* action brought by RELATOR on behalf of the State of Louisiana to
11
      recover treble damages and civil penalties under the Louisiana Medical Assistance Programs Integrity
12
      Law, La. Rev. Stat. Ann. § 437.1 *et seq.*
13
        184.   La. Rev. Stat. Ann. § 438.3 provides-
14

15             (A) No person shall knowingly present or cause to be presented a false
               or fraudulent claim;
16             (B) No person shall knowingly engage in misrepresentation to obtain,
               or attempt to obtain, payment from medical assistance program funds;
17             (C) No person shall conspire to defraud, or attempt to defraud, the
               medical assistance programs through misrepresentation or by
18             obtaining, or attempting to obtain, payment for a false or fraudulent
               claim;
19

20      185.   In addition, La. Rev. Stat. Ann. § 438.2(A) prohibits the solicitation, receipt, offering

21    or payment of any financial inducements, including kickbacks, bribes, rebates, etc., directly or

22    indirectly, overtly or covertly, in cash or in kind, for furnishing healthcare goods or services paid for

23    in whole or in part by the Louisiana medical assistance programs.

24      186.   Defendant violated La. Rev. Stat. Ann. § 438.2(A) by engaging in the conduct

25    described herein.

26      187.   Defendant furthermore violated La. Rev. Stat. Ann. §438.3 and knowingly caused

27    hundreds of thousands of false claims to be made, used and presented to the State of Louisiana by

28    its deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-

                                    FALSE CLAIMS ACT COMPLAINT
                                              - 38 -

1 Kickback Act and La. Rev. Stat. Ann. § 438.2(A), and by virtue of the fact that none of the claims
2 submitted in connection with its conduct were even eligible for reimbursement by the government-
3 funded healthcare programs.

4     188.    The State of Louisiana, by and through the Louisiana Medicaid program and other state
5 healthcare programs, and unaware of Defendant's' conduct, paid the claims submitted by healthcare
6 providers and third party payers in connection therewith.

7     189.    Compliance with applicable Medicare, Medicaid and the various other federal and
8 state laws cited herein was an implied, and upon information and belief, also an express condition of
9 payment of claims submitted to the State of Louisiana in connection with Defendant's conduct.
10 Compliance with applicable Louisiana statutes, regulations and Pharmacy Manuals was also an
11 express condition of payment of claims submitted to the State of Louisiana.

12     190.    Had the State of Louisiana known that Defendant was violating the federal and state
13 laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to
14 meet the reimbursement criteria of the government-funded healthcare programs or were premised on
15 false and/or misleading information, it would not have paid the claims submitted by healthcare
16 providers and third party payers in connection with that conduct.

17     191.    As a result of Defendant's violations of La. Rev. Stat. Ann. § 438.3 the State of
18 Louisiana has been damaged in an amount far in excess of millions of dollars exclusive of interest.

19     192.    RELATOR is a private citizen with direct and independent knowledge of the
20 allegations of this Complaint, who has brought this action pursuant to La. Rev. Stat. Ann. §439.1(A)
21 on behalf of themselves and the State of Louisiana.

22     193.    This Court is requested to accept pendant jurisdiction of this related state claim as it
23 is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to
24 the State of Louisiana in the operation of its Medicaid program.

25     WHEREFORE, RELATOR respectfully requests this Court to award the following damages
26 to the following parties and against Defendant:

27

28

FALSE CLAIMS ACT COMPLAINT
- 39 -

To the STATE OF LOUISIANA:

(1) Three times the amount of actual damages which the State of Louisiana has sustained as a result of Defendant's conduct;
(2) A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendant caused to be presented to the State of Louisiana;
(3) Prejudgment interest; and
(4) All costs incurred in bringing this action.

To RELATOR:

(1) The maximum amount allowed pursuant to La. Rev. Stat. § 439.4(A) and/or any other applicable provision of law;
(2) Reimbursement for reasonable expenses which Relator incurred in connection with this action;
(3) An award of reasonable attorneys' fees and costs; and
(4) Such further relief as this Court deems equitable and just.

COUNT XI
HAWAII FALSE CLAIMS ACT

194. Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 84 above as if fully set forth herein.

195. This is a *qui tam* action brought by RELATOR on behalf of the State of Hawaii to recover treble damages and civil penalties under the Hawaii False Claims Act, Haw. Rev. Stat. § 661-21 *et seq.*

196. Haw. Rev. Stat. § 661-21(a) provides liability for any person who-

> (1) knowingly presents, or causes to be presented, to an officer or employee of the state a false or fraudulent claim for payment or approval;
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or d by the state;
> (3) conspires to defraud the state by getting a false or fraudulent claim allowed or paid; or
> (8) is a beneficiary of an inadvertent submission of a false claim to the State, who subsequently discovers the falsity of the claim, and fails to disclose the false claim to the State within a reasonable time after discovery of the false claim.

197. Defendant violated Haw. Rev. Stat. §661-21(a) and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Hawaii by its deliberate and systematic violation of federal and state laws, including the FDCA and Anti-Kickback Act, and by

1   virtue of the fact that none of the claims submitted in connection with its conduct were even eligible
2   for reimbursement by the government-funded healthcare programs.

3         198.   The State of Hawaii, by and through the Hawaii Medicaid program and other state
4   healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare
5   providers and third party payers in connection therewith.

6         199.   Compliance with applicable Medicare, Medicaid and the various other federal and
7   state laws cited herein was an implied, and upon information and belief; also an express condition of
8   payment of claims submitted to the State of Hawaii in connection with Defendant's conduct.
9   Compliance with applicable Hawaii statutes, regulations and Pharmacy Manuals was also an express
10  condition of payment of claims submitted to the State of Hawaii.

11        200.   Had the State of Hawaii known that Defendant was violating the federal and state laws
12  cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet
13  the reimbursement criteria of the government-funded healthcare programs or were premised on false
14  and/or misleading information, it would not have paid the claims submitted by healthcare providers
15  and third party payers in connection with that conduct.

16        201.   As a result of Defendant' violations of Haw. Rev. Stat. § 661-21(a) the State of Hawaii
17  has been damaged in an amount far in excess of millions of dollars exclusive of interest.

18        202.   RELATOR is a private citizen with direct and independent knowledge of the
19  allegations of this Complaint, who has brought this action pursuant to Haw. Rev. Stat. § 661-25(a)
20  on behalf of themselves and the State of Hawaii.

21        203.   This Court is requested to accept pendant jurisdiction of this related state claim as it
22  is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to
23  the State of Hawaii in the operation of its Medicaid program.

24        WHEREFORE, RELATOR respectfully requests this Court to award the following damages
25  to the following parties and against Defendant:

26

27

28

1    To the STATE OF HAWAII:

2        (1)   Three times the amount of actual damages which the State of Hawaii has
               sustained as a result of Defendant's illegal conduct;
3        (2)   A civil penalty of not less than $5,000 and not more than $10,000 for each
               false claim which Defendant caused to be presented to the State of Hawaii;
4        (3)   Prejudgment interest; and
         (4)   All costs incurred in bringing this action.
5
     To RELATOR:
6
         (1)   The maximum amount allowed pursuant to Haw. Rev. Stat. §661-27 and/or
7              any other applicable provision of law;
         (2)   Reimbursement for reasonable expenses which Relator incurred in connection
8              with this action;
         (3)   An award of reasonable attorneys' fees and costs; and
9        (4)   Such further relief as this Court deems equitable and just.

10
                                        COUNT XII
11          DISTRICT OF COLUMBIA PROCUREMENT REFORM AMENDMENT ACT

12
         204.   Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 84
13
     above as if fully set forth herein.
14
         205.   This is a *qui tam* action brought by RELATOR and the District of Columbia to recover
15
     treble damages and civil penalties under the District of Columbia Procurement Reform Amendment
16
     Act, D.C. Code § 2-308.13 *et seq.*
17
         206.   D.C. Code § 2-308.14(a) provides liability for any person who-
18
                (1) knowingly presents, or causes to be presented, to an officer or
19              employee of the District a false claim for payment or approval;
                (2) knowingly makes, uses, or causes to: be made or used, a false
20              record or statement to get a false claim paid or approved by the
                District;
21              (3) conspires to defraud the District by getting a false claim allowed
                or paid by the District;
22              (8) is the beneficiary of an inadvertent submission of a false claim to
                the District, subsequently discovers the falsity of the claim, and fails
23              to disclose the false claim to the District.

24
         207.   In addition, D.C. Code § 4-802(c) prohibits soliciting, accepting, or agreeing to accept
25
     any type of remuneration for the following:
26
                (1)   Referring a recipient to a particular provider of any item or
27              service or for which payment may be made under the District of
28              Columbia Medicaid program, or

                              FALSE CLAIMS ACT COMPLAINT
                                        - 42 -

1          (2)    Recommending the purchase, lease, or order of any good,
           facility, service, or item for which payment may be made under the
2          District of Columbia Medicaid Program.

3
           208.    Defendant violated D.C. Code § 4-802(c) by engaging in the illegal conduct described
4
   herein.
5
           209.    Defendant furthermore violated D.C. Code § 2-308.14(a) and knowingly caused
6
   thousands of false claims to be made, used and presented to the District of Columbia by its deliberate
7
   and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act
8
   D.C. Code § 4-802(c), and by virtue of the fact that none of the claims submitted in connection with
9
   its illegal conduct were even eligible for reimbursement by the government-funded healthcare
10
   programs.
11
           210.    The District of Columbia, by and through the District of Columbia Medicaid program
12
   and other state healthcare programs, and unaware of Defendant's illegal conduct, paid the claims
13
   submitted by healthcare providers and third party payers in connection therewith.
14
           211.    Compliance with applicable Medicare, Medicaid and the various other federal and
15
   stale laws cited herein was an implied, and upon information and belief; also an express condition of
16
   payment of claims submitted to the District of Columbia in connection with Defendant's illegal
17
   conduct. Compliance with applicable D.C. statutes, regulations and Pharmacy Manuals was also an
18
   express condition of payment of claims submitted to the District of Columbia.
19
           212.    Had the District of Columbia known that Defendant was violating the federal and state
20
   laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to
21
   meet the reimbursement criteria of the government-funded healthcare programs or were premised on
22
   false and/or misleading information, it would not have paid the claims submitted by healthcare
23
   providers and third party payers in connection with that conduct.
24
           213.    As a result of Defendant's violations of D.C. Code § 2-308.14(a) the District of
25
   Columbia has been damaged in an amount far in excess of millions of dollars exclusive of interest.
26
           214.    RELATOR is a private citizen with direct and independent knowledge of the
27
   allegations of this Complaint, who has brought this action pursuant to D.C. Code § 2-308.15(b) on
28

1   behalf of themselves and the District of Columbia.

2       215.    This Court is requested to accept pendant jurisdiction of this related state claim as it

3   is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to

4   the District of Columbia in the operation of its Medicaid program.

5       WHEREFORE, RELATOR respectfully requests this Court to award the following damages

6   to the following parties and against Defendant:

7
    To the DISTRICT OF COLUMBIA:
8
              (1)   Three times the amount of actual damages which the District of Columbia has
9                   sustained as a result of Defendant's illegal conduct;
              (2)   A civil penalty of not less than $5,000 and not more than $10,000 for each
10                  false claim which Defendant caused to be presented to the District of
                    Columbia;
11            (3)   Prejudgment interest; and
              (4)   All costs incurred in bringing this action.
12
    To RELATOR:
13
              (1)   The maximum amount allowed pursuant to D.C. Code § 2-308.15(f) and/or
14                  any other applicable provision of law;
              (2)   Reimbursement for reasonable expenses which Relator incurred in connection
15                  with this action;
              (3)   An award of reasonable attorneys' fees and costs; and
16            (4)   Such further relief as this Court deems equitable and just.

17

18                                  COUNT XIII
                            COMMONWEALTH OF VIRGINIA
19
        216.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 84
20
    above as if fully set forth herein.
21
        217.    This is a *qui tam* action brought by RELATOR on behalf of the Commonwealth of
22
    Virginia for treble damages and penalties under Virginia Fraud Against Tax Payers Act §8.01-216.3a
23
    provides liability for any person who-
24

25            (1)   knowingly presents, or causes to be presented, a false or
                    fraudulent claim for payment or approval;
26            (2)   knowingly makes, uses, or causes to be made or used, a false
                    record or statement to obtain payment or approval of a claim by the
27                  commonwealth or
              (3)   conspires to defraud the commonwealth or any political
28                  subdivision thereof through the allowance or payment of a fraudulent

                            FALSE CLAIMS ACT COMPLAINT
                                        - 44 -

claim;
(9)    is a beneficiary of an inadvertent submission of a false claim
to the common wealth or political subdivision thereof, subsequently
discovers the falsity of the claim, and fails to disclose the false claim
to the commonwealth or political subdivision within a reasonable time
after discovery of the false claim.

218.    In addition, VA Code ANN § 32.1-315 prohibits the solicitation, receipt or offering of any remuneration, including any bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any good, service or item for which payment may be made in whole or in part under the Virginia Medicaid program.

219.    Defendant violated VA Code ANN § 32.1-315 by engaging in the conduct described herein.

220.    Defendant furthermore violated Virginia Fraud Against Tax Payers Act §8.01-216.3a and knowingly caused hundreds of thousands of false claims to be made, used and presented to the Commonwealth of Virginia by its deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act, VA Code ANN § 32.1-315 and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

221.    The Commonwealth of Virginia, by and through the Virginia Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

222.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief; also an express condition of payment of claims submitted to the Commonwealth of Virginia in connection with Defendant's conduct. Compliance with applicable Virginia statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the Commonwealth of Virginia.

223.    Had the Commonwealth of Virginia known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by

1  healthcare providers and third party payers in connection with that conduct.

2       224.    As a result of Defendant's violations of Virginia Fraud Against Tax Payers Act §8.01-

3  216.3a, the Commonwealth of Virginia has been damaged in an amount far in excess of millions of

4  dollars exclusive of interest.

5       225.    RELATOR is a private citizen with direct and independent knowledge of the

6  allegations of this Complaint, who has brought this action pursuant to Virginia Fraud Against Tax

7  Payers Act §8.01-216.3 on behalf of themselves and the Commonwealth of Virginia.

8       226.    This Court is requested to accept pendant jurisdiction of this related state claim as it

9  is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to

10  the Commonwealth of Virginia in the operation of its Medicaid program.

11       WHEREFORE, RELATOR respectfully requests this Court to award the following damages

12  to the following parties and against Defendant:

13
        To the Commonwealth Of Virginia:

14
                (1)    Three times the amount of actual damages which the Commonwealth of
15                     Virginia has sustained as a result of Defendant's conduct;
                (2)    A civil penalty of not less than $5,000 and not more than $10,000 for each
16                     false claim which Defendant caused to be presented to the Commonwealth of
                       Virginia;
17              (3)    Prejudgment interest; and
                (4)    All costs incurred in bringing this action.
18
        To RELATOR:
19
                (1)    The maximum amount allowed pursuant to VA Code ANN § 32.1-315 and/or
20                     any other applicable provision of law;
                (2)    Reimbursement for reasonable expenses which Relator incurred in connection
21                     with this action;
                (3)    An award of reasonable attorneys' fees and costs; and
22              (4)    Such further relief as this Court deems equitable and just.

23
                                        COUNT XIV
24                      THE NEW HAMPSHIRE HEALTH CARE FALSE CLAIMS LAW

25

26       227.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 84

27  above as if fully set forth herein.

28  228.         This is a *qui tam* action brought by RELATOR on behalf of the State of New

                            FALSE CLAIMS ACT COMPLAINT
                                        - 46 -

1 Hampshire to recover treble damages and civil penalties under the New Hampshire Health Care False

2 Claims Law, N.H. Rev.Stat. Ann§167:61-b.

3       !. Any person shall be liable who...

4                (a)  knowingly presents, or causes to be presented, to an officer or employee of the
                 State a false or fraudulent claim for payment or approval;
5                (2)     knowingly makes, uses, or causes to be made or used, a false
                 record or statement to get a false or fraudulent claim paid or approved
6                by the State;
                 (3)     conspires to defraud the State by getting a false or fraudulent
7                claim allowed or paid.

8       229.    In addition, N.H. Rev.Stat. Ann. prohibits the solicitation or receipt of any

9 remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in

10 cash or in kind in return for furnishing any item or service for which payment may be made in whole

11 or in part under the New Hampshire Medicaid program.

12      230.    Defendant violated the N.H. Rev.Stat. Ann by engaging in the conduct described

13 herein.

14      231.    Defendant furthermore violated N.H. Rev.Stat. Ann. §167:61-b, and knowingly caused

15 hundreds of thousands of false claims to be made, used and presented to the State of New Hampshire

16 by its deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-

17 Kickback Act, and the New Hampshire Vendor Fraud and Kickback statute, and by virtue of the fact

18 that none of the claims submitted in connection with its conduct were even eligible for reimbursement

19 by the government-funded healthcare programs.

20      232.    The State of New Hampshire, by and through the New Hampshire Medicaid program

21 and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted

22 by healthcare providers and third party payers in connection therewith.

23      233.    Compliance with applicable Medicare, Medicaid and the various other federal and

24 state laws cited herein was an implied, and upon information and belief, also an express condition of

25 payment of claims submitted to the State of New Hampshire in connection with Defendant's conduct.

26 Compliance with applicable New Hampshire statutes, regulations and Pharmacy Manuals was also

27 an express condition of payment of claims submitted to the State of New Hampshire.

28

1        234.    Had the State of New Hampshire known that Defendant was violating the federal and

2   state laws cited herein and/or that the claims submitted in connection with Defendant conduct failed

3   to meet the reimbursement criteria of the government-funded healthcare programs or were premised

4   on false and/or misleading information, it would not have paid the claims submitted by healthcare

5   providers and third party payers in connection with that conduct.

6        235.    As a result of Defendant's violations of N.H. Rev.Stat. Ann. §167:61-b, the State of

7   New Hampshire has been damaged in an amount far in excess of millions of dollars exclusive of

8   interest.

9        236.    RELATOR is a private citizen with direct and independent knowledge of the

10  allegations of this Complaint, who have brought this action pursuant to N.H. Rev.Stat. Ann. §167:61-

11  b on behalf of themselves and the State of New Hampshire.

12       237.    This Court is requested to accept pendant jurisdiction of this related state claim as it

13  is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to

14  the State of New Hampshire in the operation of its Medicaid program.

15       WHEREFORE, RELATOR respectfully requests this Court to award the following damages

16  to the following parties and against Defendant:

17       To the STATE OF New Hampshire:
             (1)   Three times the amount of actual damages which the State of New Hampshire
18                 has sustained as a result of Defendant's conduct;
             (2)   A civil penalty of not less than $5,000 and not more than $10,000 for each
19                 false claim which Defendant caused to be presented to the State of New
                   Hampshire;
20           (3)   Prejudgment interest; and
             (4)   All costs incurred in bringing this action.
21
         To RELATOR:
22
             (1)   The maximum amount allowed pursuant to N.H. Rev. Stat. Ann § 167:61-b
23                 and/or any other applicable provision of law;
             (2)   Reimbursement for reasonable expenses which Relator incurred in connection
24                 with this action;
             (3)   An award of reasonable attorneys' fees and costs; and
25           (4)   Such further relief as this Court deems equitable and just.

26

27

28

---

**FALSE CLAIMS ACT COMPLAINT**
- 48 -

1                                          COUNT XV
                                   NEW YORK FALSE CLAIMS ACT
2

3        238.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 84

4   above as if fully set forth herein.

5        239.    This is a *qui tam* action brought by RELATOR on behalf of the State of New York to

6   recover treble damages and civil penalties under the New York False Claims Act, 2007 N.Y. Laws
    58, Section 39, Article XIII
7
                         Section 189 provides liability for any person who:
8                        1.(a)   knowingly presents, or causes to be presented, to any
                         employee, officer or agent of the state or local government, a false or
9                        fraudulent claim for payment or approval;
                         1. (b)  knowingly makes, uses, or causes to be made or used, a false
10                       record or statement to get a false or fraudulent claim paid or approved
                         by the state or local government;
11                       1. (c) conspires to defraud the State by getting a false or fraudulent
                         claim allowed or paid.
12

13       240.    In addition, the New York State Consolidated Laws prohibits the solicitation or receipt

14  of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or

15  covertly, in cash or in kind in return for furnishing any item or service for which payment may be

16  made in whole or in part under the New York Medicaid program.

17       241.    Defendant violated the New York State Consolidated Laws by engaging in the conduct

18  described herein.

19       242.    Defendant furthermore violated, 2007 N.Y. Laws 58, Section 39, Article XIII, and

20  knowingly caused hundreds of thousands of false claims to be made, used and presented to the State

21  of New York by its deliberate and systematic violation of federal and state laws, including the FDCA,

22  federal Anti-Kickback Act, and the New York Vendor Fraud and Kickback statute, and by virtue of

23  the fact that none of the claims submitted in connection with its conduct were even eligible for

24  reimbursement by the government-funded healthcare programs.

25       243.    The State of New York, by and through the New York Medicaid program and other

26  state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by

27  healthcare providers and third party payers in connection therewith.

28       244.    Compliance with applicable Medicare, Medicaid and the various other federal and

                                   **FALSE CLAIMS ACT COMPLAINT**
                                                  - 49 -
                                   10358210.tif - 4/7/2008 12:46:24 PM

1 state laws cited herein was an implied, and upon information and belief, also an express condition of
2 payment of claims submitted to the State of New York in connection with Defendant's conduct.
3 Compliance with applicable New York statutes, regulations and Pharmacy Manuals was also an
4 express condition of payment of claims submitted to the State of New York.

5    245.    Had the State of New York known that Defendant was violating the federal and state
6 laws cited herein and/or that the claims submitted in connection with Defendant conduct failed to
7 meet the reimbursement criteria of the government-funded healthcare programs or were premised on
8 false and/or misleading information, it would not have paid the claims submitted by healthcare
9 providers and third party payers in connection with that conduct.

10    246.    As a result of Defendant's violations of 2007 N.Y. Laws 58, Section 39, Article XIII,
11 the State of New York has been damaged in an amount far in excess of millions of dollars exclusive
12 of interest.

13    247.    RELATOR is a private citizen with direct and independent knowledge of the
14 allegations of this Complaint, who have brought this action pursuant to 2007 N.Y. Laws 58, Section
15 39, Article XIII, on behalf of themselves and the State of New York.

16    248.    This Court is requested to accept pendant jurisdiction of this related state claim as it
17 is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to
18 the State of New York in the operation of its Medicaid program.

19    WHEREFORE, RELATOR respectfully requests this Court to award the following damages
20 to the following parties and against Defendant:

21    · To the STATE OF New York:
          (1)    Three times the amount of actual damages which the State of New York has
22                 sustained as a result of Defendant's conduct;
          (2)    A civil penalty of not less than $5,000 and not more than $10,000 for each
23                 false claim which Defendant caused to be presented to the State of New York;
          (3)    Prejudgment interest; and
24        (4)    All costs incurred in bringing this action.

25    To RELATOR:

26        (1)    The maximum amount allowed pursuant to 2007 N.Y. Laws 58, Section 39,
                 Article XIII, and/or any other applicable provision of law;
27        (2)    Reimbursement for reasonable expenses which Relator incurred in connection
                 with this action;
28        (3)    An award of reasonable attorneys' fees and costs; and

1        (4)    Such further relief as this Court deems equitable and just.

2                           COUNT XVI
                 MICHIGAN MEDICAID FALSE CLAIMS ACT

3        249.   Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 84

4    above as if fully set forth herein.

5        250.   This is a *qui tam* action brought by RELATOR on behalf of the State of Michigan to

6    recover treble damages and civil penalties under the Michigan Medicaid False Claims Act. MI ST Ch.

7    400.603 et seq.

8            400.603 provides liability in pertinent part as follows:
9            Sec. 3. (1)    A person shall not knowingly make or cause to be made
             a false statement or false representation of a material fact in an
10           application for medicaid benefits;
             (2)    A person shall not knowingly make or cause to be made a false
11           statement or false representation of a material fact for use in
             determining rights to a medicaid benefit...

12       251.   In addition, MI ST Ch. 400.604 prohibits the solicitation or receipt of any

13   remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in

14   cash or in kind in return for furnishing any item or service for which payment may be made in whole

15   or in part under the Michigan Medicaid program.

16       252.   Defendant violated MI ST Ch. 400.603 et seq. by engaging in the conduct described

17   herein.

18       253.   Defendant furthermore violated, MI ST Ch. 400.603 et seq. and knowingly caused

19   hundreds of thousands of false claims to be made, used and presented to the State of Michigan by

20   its deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-

21   Kickback Act, and by virtue of the fact that none of the claims submitted in connection with its

22   conduct were even eligible for reimbursement by the government-funded healthcare programs.

23       254.   The State of Michigan, by and through the Michigan Medicaid program and other state

24   healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare

25   providers and third party payers in connection therewith.

26       255.   Compliance with applicable Medicare, Medicaid and the various other federal and

27   state laws cited herein was an implied, and upon information and belief, also an express condition of

28

1 payment of claims submitted to the State of Michigan in connection with Defendant's conduct.

2 Compliance with applicable Michigan statutes, regulations and Pharmacy Manuals was also an

3 express condition of payment of claims submitted to the State of Michigan.

4     256.    Had the State of Michigan known that Defendant was violating the federal and state

5 laws cited herein and/or that the claims submitted in connection with Defendant conduct failed to

6 meet the reimbursement criteria of the government-funded healthcare programs or were premised on

7 false and/or misleading information, it would not have paid the claims submitted by healthcare

8 providers and third party payers in connection with that conduct.

9     257.    As a result of Defendant's violations of MI ST Ch. 400.603 et seq. the State of

10 Michigan has been damaged in an amount far in excess of millions of dollars exclusive of interest.

11     258.    RELATOR is a private citizen with direct and independent knowledge of the

12 allegations of this Complaint, who have brought this action pursuant to MI ST Ch. 400.603 et seq.

13 on behalf of themselves and the State of Michigan.

14     259.    This Court is requested to accept pendant jurisdiction of this related state claim as it

15 is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to

16 the State of Michigan in the operation of its Medicaid program.

17     WHEREFORE, RELATOR respectfully requests this Court to award the following damages

18 to the following parties and against Defendant:

19 To the STATE OF Michigan:
    (1)   Three times the amount of actual damages which the State of Michigan has
20          sustained as a result of Defendant's conduct;
    (2)   A civil penalty of not less than \$5,000 and not more than \$10,000 for each
21          false claim which Defendant caused to be presented to the State of Michigan;
    (3)   Prejudgment interest; and
22     (4)   All costs incurred in bringing this action.

23 To RELATOR:

24     (1)   The maximum amount allowed pursuant to MI ST Ch. 400.603 et seq. and/or
         any other applicable provision of law;
25     (2)   Reimbursement for reasonable expenses which Relator incurred in connection
         with this action;
26     (3)   An award of reasonable attorneys' fees and costs; and
    (4)   Such further relief as this Court deems equitable and just.

27

28

**FALSE CLAIMS ACT COMPLAINT**
- 52 -

1

COUNT XVII
NEW MEXICO MEDICAID FALSE CLAIMS ACT

2

260.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 84

3

above as if fully set forth herein.

4

261.    This is a *qui tam* action brought by RELATOR on behalf of the State of New Mexico

5

to recover treble damages and civil penalties under the New Mexico Fraud Against Taxpayers Act

6

N.M. Stat. Ann§§ 27-14-1 et seq.

7

Section 3  provides liability in pertinent part as follows:

8

A. A person shall not:
(1)     knowingly present, or cause to be presented, to an employee,

9

officer or agent of the state or to a contractor, grantee, or other
recipient of state funds a false or fraudulent claim for payment or

10

approval;;
(2)     knowingly make or use, or cause to be made or used, a false,

11

misleading or fraudulent record or statement to obtain or support the
approval of or the payment on a false or fraudulent claim;

12

(3)     conspire to defraud the state by obtaining approval or payment
on a false or fraudulent claim...

13

262.    In addition, N.M. Stat. Ann§§ 30-44-7 et seq. prohibits the solicitation or receipt of

14

any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly,

15

in cash or in kind in return for furnishing any item or service for which payment may be made in

16

whole or in part under the New Mexico Medicaid program.

17

263.    Defendant violated N.M. Stat. Ann§§ 30-44-7 et seq by engaging in the conduct

18

described herein.

19

264.    Defendant furthermore violated, N.M. Stat. Ann§§ 27-14-1 et seq. and knowingly

20

caused hundreds of thousands of false claims to be made, used and presented to the State of New

21

Mexico by its deliberate and systematic violation of federal and state laws, including the FDCA,

22

federal Anti-Kickback Act, and by virtue of the fact that none of the claims submitted in connection

23

with its conduct were even eligible for reimbursement by the government-funded healthcare

24

programs.

25

265.    The State of New Mexico, by and through the New Mexico Medicaid program and

26

other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by

27

healthcare providers and third party payers in connection therewith.

28

10358210.tif - 4/7/2008 12:46:24 PM

266.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of New Mexico in connection with Defendant's conduct. Compliance with applicable New Mexico statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of New Mexico.

267.    Had the State of New Mexico known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

268.    As a result of Defendant's violations of N.M. Stat. Ann§§ 27-14-1 et seq. the State of New Mexico has been damaged in an amount far in excess of millions of dollars exclusive of interest.

269.    RELATOR is a private citizen with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to N.M. Stat. Ann§§ 27-14-1 et seq. on behalf of themselves and the State of New Mexico.

270.    This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of New Mexico in the operation of its Medicaid program.

WHEREFORE, RELATOR respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF New Mexico:
   (1)  Three times the amount of actual damages which the State of New Mexico has sustained as a result of Defendant's conduct;
   (2)  A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendant caused to be presented to the State of New Mexico;
   (3)  Prejudgment interest; and
   (4)  All costs incurred in bringing this action.

To RELATOR:

   (1)  The maximum amount allowed pursuant to N.M. Stat. Ann§§ 27-14-1 et seq. and/or any other applicable provision of law;
   (2)  Reimbursement for reasonable expenses which Relator incurred in connection with this action;

1      (3)   An award of reasonable attorneys' fees and costs; and
       (4)   Such further relief as this Court deems equitable and just.
2

3                                    COUNT XVIII
4          INDIANA FALSE CLAIMS AND WHISTLEBLOWER PROTECTION ACT

5
           271.   Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 84
6
      above as if fully set forth herein.
7
           272.   This is a *qui tam* action brought by RELATOR on behalf of the State of Indiana to
8
      recover treble damages and civil penalties under the Indiana False Claims and Whistleblower
9
      Protection Act, INDIANA Code 5-11-5.5 et seq
10
                  (b) A person who knowingly or intentionally:
11
                  (1) presents a false claim to the state for payment or approval;
12                (2) makes or uses a false record or statement to obtain payment or
                  approval of a false claim from the state;
13                (3) with intent to defraud the state, delivers less money or property to
                  the state than the amount recorded on the certificate or receipt the
14                person receives from the state;
                  (4) with intent to defraud the state, authorizes issuance of a receipt
15                without knowing that
                  (5) receives public property as a pledge of an obligation on a debt from
16                an employee who is not lawfully authorized to sell or pledge the
                  property;
17                (6) makes or uses a false record or statement to avoid an obligation to
                  pay or transmit property to the state;
18                (7) conspires with another person to perform an act described in
                  subdivisions (1) through (6); or
19                (8) causes or induces another person to perform an act described in
                  subdivisions (1) through (6)...
20
                  a penalty or damages.
21

22
           273.   In addition, INDIANA Code 5-11-5.5 et seq. prohibits the solicitation or receipt of any
23
      remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in
24
      cash or in kind in return for furnishing any item or service for which payment may be made in whole
25
      or in part under the Indiana Medicaid program.
26
           274.   Defendant violated the INDIANA Code 5-11-5.5 et seq. by engaging in the conduct
27
      described herein.
28

                              **FALSE CLAIMS ACT COMPLAINT**
                                       - 55 -

1    275.    Defendant furthermore violated INDIANA Code 5-11-5.5 et seq. and knowingly
2  caused hundreds of thousands of false claims to be made, used and presented to the State of Indiana
3  by its deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-
4  Kickback Act, and the Indiana Vendor Fraud and Kickback statute, and by virtue of the fact that none
5  of the claims submitted in connection with its conduct were even eligible for reimbursement by the
6  government-funded healthcare programs.

7    276.    The State of Indiana, by and through the Indiana Medicaid program and other state
8  healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare
9  providers and third party payers in connection therewith.

10    277.    Compliance with applicable Medicare, Medicaid and the various other federal and
11  state laws cited herein was an implied, and upon information and belief, also an express condition of
12  payment of claims submitted to the State of Indiana in connection with Defendant's conduct.
13  Compliance with applicable Indiana statutes, regulations and Pharmacy Manuals was also an express
14  condition of payment of claims submitted to the State of Indiana.

15    278.    Had the State of Indiana known that Defendant was violating the federal and state laws
16  cited herein and/or that the claims submitted in connection with Defendant conduct failed to meet the
17  reimbursement criteria of the government-funded healthcare programs or were premised on false
18  and/or misleading information, it would not have paid the claims submitted by healthcare providers
19  and third party payers in connection with that conduct.

20    279.    As a result of Defendant's violations of INDIANA Code 5-11-5.5 et seq., the State of
21  Indiana has been damaged in an amount far in excess of millions of dollars exclusive of interest.

22    280.    RELATOR is a private citizen with direct and independent knowledge of the
23  allegations of this Complaint, who have brought this action pursuant to INDIANA Code 5-11-5.5 et
24  seq. on behalf of themselves and the State of Indiana.

25    281.    This Court is requested to accept pendant jurisdiction of this related state claim as it
26  is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to
27  the State of Indiana in the operation of its Medicaid program.

28

**FALSE CLAIMS ACT COMPLAINT**
- 56 -

10358210.tif - 4/7/2008 12:46:24 PM

1      WHEREFORE, RELATOR respectfully requests this Court to award the following damages

2 to the following parties and against Defendant:

3      To the STATE OF Indiana:

4         (1)    Three times the amount of actual damages which the State of Indiana has sustained as a result of Defendant's conduct;

5         (2)    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendant caused to be presented to the State of Indiana;

6         (3)    Prejudgment interest; and

          (4)    All costs incurred in bringing this action.

7

To RELATOR:

8         (1)    The maximum amount allowed pursuant to INDIANA Code 5-11-5.5 et seq. and/or any other applicable provision of law;

9         (2)    Reimbursement for reasonable expenses which Relator incurred in connection with this action;

10         (3)    An award of reasonable attorneys' fees and costs; and

11         (4)    Such further relief as this Court deems equitable and just.

12    DATED: April 7, 2008.          NOLAN & AUERBACH, P.A.

13

14                             By: _____

15                                 Matthew Pavone
                                Attorney for Plaintiff/Relator
16                                 JOHN PRIEVE

17                                 Kenneth J. Nolan, Esq.
                                Marcella Auerbach, Esq.

18

19

20

21

22

23

24

25

26

27

28

FALSE CLAIMS ACT COMPLAINT
- 57 -

10358210.tif - 4/7/2008 12:46:24 PM